## CHOATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 243.

Circuit Court of Appeals, Second Circuit.

June 24, 1942.

Harry W. Forbes, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This petition involves the petitioner's liability for an asserted income tax deficiency of $2,789.45, imposed by reason of his receipt of stock purchase rights. The facts were stipulated before the Board, and were found by it as stipulated. The taxpayer owned 10,000 shares of the common stock of the Crane Company, an Illinois corporation, which had outstanding on May 1, 1937, 2,348,628 shares of common and 145,889

shares of seven percent cumulative preferred. In May, 1937, Crane's articles of incorporation were amended to authorize the issuance of 200,000 shares of five percent cumulative preferred, to be subject to the outstanding seven percent preferred. The new preferred was convertible into common stock at specified ratios varying from time to time. On May 28, 1937, the common stockholders, pro rata, were given the right to subscribe to the new preferred on or before June 17, 1937, at $100 a share (the par value) at the rate of one share of preferred to each twelve shares of common. Underwriters agreed with Crane to take, at par, any unsubscribed preferred.

Taxpayer received 10,000 rights, of a fair market value, at the time of receipt, of $4,375.00. On June 1, such rights were sold on the New York Stock Exchange at prices ranging between $.25 and $.34375. By June 15 and 16, the rights were quoted at an average of $.02033. The stock sold (on a when-issued basis) at about $104 on June 1, $101-1/2 on June 15, and $100-3/16 on June 17. On June 15, taxpayer gave his rights to various members of his family, and on June 17, the donees exercised all but four of the rights. The Board of Tax Appeals, with an opinion reported at 45 B.T.A. 574 held that $4,375, the value of the rights at the time of receipt, constituted income taxable to the taxpayer.

1. Petitioner argues that the transaction is subject to no tax, while the Commissioner asserts that the Board correctly held that there is a valid tax on the value of the rights when received by petitioner. We cannot agree with either contention.

■ 2. Income tax "law" is not a matter of pure reason. It is a composite of constitutional doctrine and interpretations of changing statutory provisions each having its history. In ascertaining the meaning of those provisions, we must be guided by the light of Supreme Court decisions. We are merely a reflector, serving as a judicial moon.[1]

Our light in this case comes chiefly from Palmer v. Commissioner, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50. That case involved the question of the taxability of rights (options) issued by a company to its common stockholders to buy the stocks, owned by it, of other corporations. The basic factual premise of the decision was that, although the option price when the rights were exercised was substantially below the fair market value of the optioned stock, the Board found that when the rights were issued there was no such "spread." Beginning with a statement that the court accepted those findings of fact, the court's discussion, as we interpret it, was in outline as follows:

The tax statute there applicable (the Revenue Act of 1928) made no express mention of rights. The court looked to § 115(a), which then, as now, was restricted to corporate distributions out of post-1913 corporate profits or earnings.[2] The corporation there involved had such earnings. The basic question, then, said the court, was whether the corporate action in issuing the rights could be regarded as showing an intention to distribute corporate earnings. The court discussed divers situations:

■ (a) If such a corporation distributes to its stockholders property rather than cash, there is, nevertheless, of course, a taxable dividend.[3]

■ (b) If it sells or contracts to sell property to its stockholders at its fair market value, so that no "spread" then exists, there is no corporate intention to distribute profits, and, therefore, no dividend.[4] If, after such a sale, or after such a contract to sell, the market value of the property increases, so that a "spread," beneficial to the stockholders then occurs, that "spread" is no more taxable than if the purchasers had not been stockholders, for

[1] Perhaps the figure indicates too much abjectness. On occasions, sometimes unwittingly, lower courts in tax cases manifest some creativeness.

[2] We discuss below the suggestion that rights are taxable under § 22(a) without reference to § 115. 26 U.S.C.A. Int.Rev. Acts, pages 354, 384. It should be noted that § 22(e) provides that corporate "distributions" shall be taxed under § 115(f).

[3] We assume throughout this opinion that the corporate distributions we discuss do not exceed the post-1913 corporate earnings. In the case at bar, the corporation had post-1913 earnings and profits of more than $5,000,000 on the relevant dates.

[4] The court in the Palmer case makes basic the corporate intention to distribute corporate earnings. We take it that the essential factor is an "objective," not a "subjective," intention, i. e., that a substantial "spread" would be regarded as showing that such an intention existed regardless of what the corporate officers said or did not say.

an intention to distribute that "spread" cannot be imputed to the company.

(c) But if, at the very time of the sale to or the contract with the stockholders, there was a substantial "spread" favorable to the stockholders, it will be considered that there was a corporate intention to distribute that spread, i. e., that a corporate distribution of earnings, and, therefore, a dividend, was intended.[5] The situation is the same as if the company had sold the property to strangers and then distributed to its stockholders an amount of cash equal to that "spread." See Eastern Carbon Black Co. v. Brast, 4 Cir., 104 F.2d 460.

(d) We come, then, to a case where a company issues options to its stockholders to buy some of its property. If when the options are issued, there is no "spread," favorable to the stockholders, between the fair market value of the property and the option price, there cannot be said to be a corporate intention to distribute corporate earnings, and therefore there can be no taxable dividend resulting from the exercise of the options. And this is true even if such a "spread" occurs after the issuance, and even if one exists when the options are exercised. Having in mind the corporate intention as basic, the situation is the same as where a favorable spread first occurs after a company makes a sale to or contract to sell with its stockholders. Accordingly, in the Palmer case, as there was no spread when the options (rights) were issued, there was no taxable dividend merely because a spread occurred after the issuance or because there was a spread at the time of their exercise.

(e) If, however, when the options are issued, there is a substantial "spread" favoring the stockholders, then a corporate intention to distribute corporate earnings must ordinarily be regarded as existing. But the options are merely offers to distribute such earnings. Unless and until such an option is exercised, no distribution

of corporate earnings occurs. Notwithstanding the option, the company's property and surplus are no less than they were before the options were issued.[6] The options are potential dividends but, in and of themselves, are not dividends taxable under § 115.[7] (It is significant that the court at this point cites Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824; there it was held that, for purposes of determining taxable gain or loss resulting from the sale of property acquired through the exercise of an option, the "acquisition" is regarded as not occurring until the option is exercised.)

(f) When such a favorable option[8] is exercised, the corporate offer, embodied in the option, intentionally to distribute corporate earnings, is accepted by the stockholder. A taxable dividend—a taxable corporate distribution—then results.

For reasons already noted, any increase in the "spread" between the date of the issuance of the options and the exercise of any option, is not a dividend: As the corporate intention governs, the amount of the taxable dividend, occurring when the favorable option is exercised, does not exceed the "spread" existing when the option was issued. On the other hand, since there is no distribution until such an option is exercised, the taxable dividend cannot exceed the "spread" which exists when that option is exercised.

In sum, in the case of such an option, the taxable dividend does not exceed whichever is the lower of the following: (1) the spread at the time of the issuance of the option and (2) the spread at the time of its exercise.

Such is our understanding of the Palmer case.

3. As above noted, because the Board found that no spread existed when the rights (options) were issued in the Palmer case, there was no corporate intention to distribute earnings and consequently there could be no taxable dividend, despite

---

[5] It is conceivable that there might be a case in which it could be shown that, despite such a spread, no distribution of corporate earnings was intended. But there would be a heavy burden on the taxpayer seeking so to show.

[6] While the options endure, they restrict the sale of the corporate property under option, but that is too tenuous a basis for asserting a corporate distribution.

[7] Before the Palmer case was decided, we had held otherwise. Ramapo, Inc., v. Commissioner, 2 Cir., 84 F.2d 986.

[8] That is, one which carries a substantial spread at the time of issuance to the stockholders. In using the word "substantial," we mean only to indicate that the spread should be sufficiently great to indicate an intention to make a distribution of earnings.

the subsequent occurrence of a spread. In the instant case, however, the Board found that, when the rights were issued, there was a substantial favorable spread.[9] Were the facts here identical otherwise with those in Palmer, there would clearly be a taxable gain as of the date of the exercise of the rights. There, as noted, the rights pertained to stocks of other corporations; here the rights were rights to buy (i. e., subscribe to) the company's own unissued preferred stock. Assuming, for the time being, that that difference lacks importance in respect of the problem before us, this follows: The rights in this case were not taxable on their mere issuance, despite the favorable spread then existing. There occurred a taxable dividend when they were later exercised. But as the spread then was lower than it was when the rights were issued, the tax is on the amount of the spread at the time of exercise.

■ 4. True, petitioner, the stockholder who received the rights, did not himself exercise them, but gave them to members of his family who exercised them. However, precisely because the donees are members of his family, under Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, as we have previously interpreted it,[10] the taxable income must be regarded as the donor's. As aptly stated by Judge Magruder in Commissioner v. Bateman, 1 Cir., 127 F.2d 266, 273, when explaining the Horst decision, "one who retains substantial ownership of the tree is taxable on the fruit thereof, despite his assignment to a donee of the right to pick the fruit."

■ 5. For the following reason, we hold that the rules of the Palmer case are applicable here although there the rights covered stocks of other companies and here they covered the company's own unissued preferred stock: In Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923, it was said that rights issued to its common stockholders, to subscribe to a company's unissued common stock, are analogous to stock dividends.

Such stock dividends were not constitutionally taxable under Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570.[11] But under § 115(f) stock dividends are now taxable so far as such a tax is constitutional, and so are rights to the extent that they are dividends. A stock dividend in preferred stock issued to common stockholders is, therefore, now subject to a valid tax.[12] Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756; Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; Strassburger v. Commissioner, 2 Cir., 124 F.2d 315. Accordingly, an exercised right issued by the company here to its common to buy its unissued preferred was the equivalent of a validly taxable stock dividend—subject to the limitations as to the taxable spread heretofore noted.

6. § 115(f) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 870, reads: "A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution."

It is urged by petitioner that the negative form of this section discloses no Congressional intention to tax any rights. But the Palmer case shows that, prior to that enactment, exercised rights in some circumstances were taxable as dividends, although rights were not then mentioned in the statute. § 115(f) as it now stands was surely not intended to restrict the area of taxable income. And, as it reads, it was a substitute for a House draft of that section which provided: "A distribution made by a corporation to its shareholders in stock of the corporation or in rights to acquire stock of the corporation shall be treated as a taxable dividend to the extent that such distribution constitutes income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution and represents a distribution of earnings or profits accumulated after February 28, 1913.

---

9 The fact that underwriters had agreed to take at par does not militate against a spread between par and market value, since the underwriters could make a profit only if there was such a spread.

10 Cf. Commissioner v. Chamberlain, 2 Cir., 121 F.2d 765; Commissioner v. Buck, 2 Cir., 120 F.2d 775.

11 Unless and until it is reversed by the Supreme Court, that decision still binds us; we recently so decided. Commissioner v. Griffiths, 2 Cir., June 11, 1942, 129 F.2d 321.

12 We regard as immaterial the fact that the preferred stock here is convertible, at the election of the holder, into common stock. Cf. Strassburger v. Commissioner, supra.

\* \* \*" The legislative history shows that its present wording was not designed to change the intention of the House draft to tax rights as dividends so far as constitutional. See Seidman, Legislative History of Federal Income Tax Laws (1938) 248-249. Moreover, § 27(e) of the 1936 Act speaks of a "stock right which is a taxable dividend in the hands of shareholders under section 115(f) \* \* \*" It should also be noted that Treasury Regulations 94, Art. 115-07 states the meaning of § 115(f) affirmatively: "A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall be treated as a dividend to the full extent that it constitutes income to the shareholders within the meaning of the sixteenth amendment to the Constitution."

 7. The Commissioner argues that the rights are taxable whether or not they are dividends, i. e., without regard to § 115. We take this to be a contention that they are taxable under § 22(a). But such a contention must fail for these reasons: In the Palmer case, the court held that rights were taxable when exercised, if they were dividends. There, because there was no "spread" when the rights were issued, the court held there was no dividend and therefore no tax. We interpret that case as holding that the rights were not taxable except as dividends, i. e., that they were not taxable except in so far as they were corporate distributions (dividends) under § 115. It is suggested that the government in the Palmer case did not urge that rights were taxable under § 22(a) and without regard to § 115; but we do not feel at liberty to distinguish in that way a Supreme Court decision so carefully detailed in its reasoning until that Court says we may do so. And no changes have since been made in the statute applied in the Palmer case which render rights taxable other than as dividends. Rights, to be sure, are mentioned in the 1936 and succeeding Acts, but, so far as we have found, they are referred to only in so far as they are taxable as dividends. See §§ 27(e), 115 (f) (1), 115(f) (2), and 115(h) of the 1936 Act. Whether, if Congress had said that rights should in all respects be taxable so far as constitutional, and without regard to their status as dividends, the rights here would be taxable, we need not now decide.

8. Petitioner makes much of the Miles case, supra. There the rights were issued to the company's common stock and gave a privilege to subscribe to its common stock. The court said that as, under Eisner v. Macomber, a dividend of common on common was not constitutionally taxable, such rights, analogous to stock dividends, were similarly exempt constitutionally. As already noted, the implication of such a statement does not help petitioner here to escape tax, because of the difference—important under Koshland v. Helvering, supra, Helvering v. Gowran, supra and Strassburger v. Commissioner, supra—that here the rights relate to preferred. And that same distinction—one with an important difference—affects similarly the court's remark in the Miles case that the mere exercise of the rights in that case would not have yielded a taxable gain.

The court there directly held that on the sale of a right a tax arose; it regarded the transaction as the equivalent of the exercise of the right plus the sale at a profit of the new stock thus acquired. But, since it also said that the taxable gain occurred on the mere sale of the right, regardless of whether its purchaser actually exercised it, it is difficult to see how the taxable gain on such a sale can be regarded as a dividend—a distribution of corporate earnings—in the light of the Palmer case; perhaps the explanation is that the gain on the sale of a right is taxable under § 22(a) without reference to § 115; however, that question is not before us in this case for decision.

 9. For reasons above stated, the gain taxable to petitioner is the amount of the "spread" at the time when the rights were exercised by his donees, members of his family. The Board has made no finding as to that figure. Such a finding is for the Board, not for us, to make.

The Board's order is reversed and the case remanded to the Board with directions to proceed in accordance with this opinion.