Joseph N. **RINKER** and Eloise Rinker,
Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 67–581 Civ.

United States District Court
S. D. Florida.

July 15, 1968.

Stuart W. Patton, Miami, Fla., Herbert L. Awe, Washington, D. C., for plaintiffs.

William A. Meadows, Jr., U. S. Atty., Miami, Fla., Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

CHOATE, Senior District Judge.

This action was timely filed by plaintiffs for the recovery of Federal income taxes in the amount of $655.47 alleged to have been erroneously assessed and collected for the calendar year 1960. The parties have filed with the court a stipulation of facts, which is hereby adopted. Jurisdiction is conferred by virtue of 28 U.S.C. § 1346(a) (1).

Plaintiff, Joseph Rinker, in 1960 received a stock dividend from Rinker Materials Corporation (RMC), a Florida corporation with its principal place of business at West Palm Beach, Florida. Section 305(a) of the Internal Revenue Code of 1954 provides as a general rule

that the value of a stock dividend is not included in gross income. An exception to that rule is contained in subsection 305(b), which provides:

"(b) Distributions in Lieu of Money.—Subsection (a) shall not apply to a distribution by a corporation of its stock (or rights to acquire its stock), and the distribution shall be treated as a distribution of property to which section 301 applies—

\* \* \* \* . \* \*

"(2) if the distribution is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either—

"(A) in its stock (or in rights to acquire stock), or

"(B) in property."

The issue in this case is whether plaintiff had an election to have distributed to him cash in lieu of stock within the meaning of section 305(b) (2).

On June 6, 1960, the RMC board of directors adopted a resolution which provided that:

"RESOLVED, that a stock dividend of 5% be paid to holders of record on March 31, 1960, on or before July 15, 1960, and that said dividends may be cashed at the request of the stockholders at a value per share yet to be determined."

As of March 31, 1960, plaintiff, Joseph Rinker, owned approximately 1.4% of the outstanding stock of RMC. His brother, M. E. Rinker, Sr., owned directly slightly over 50% of the stock. The remainder of the stock was owned by RMC employees and other members of the Rinker family and their friends.

Pursuant to the corporate resolution set forth above plaintiff received on July 15, 1960, 75 shares of RMC stock. In all, 5,439 RMC shares were distributed as stock dividends to the RMC stockholders in 1960. In that year (but subsequent to July 15) and in later years, the company purchased 133 of those shares; none of these shares purchased was owned by plaintiff. Of the 133 shares purchased, 76 were acquired from shareholder-employees at or about the time they severed their employment with the company. The remaining 57 shares were purchased from a single shareholder, who, in need of money, had obtained permission from M. E. Rinker, Sr. for the corporate redemption.

In the two preceding years the RMC stockholders had received identical 5% stock dividends, but in 1960 for the first time the words "said dividends may be cashed at the request of the stockholders" were incorporated in the corporate resolution declaring the dividend. The adoption of this language in 1960 reflected no change in the corporate policy which existed for many years prior to 1960 with respect to the sale or purchase of its stock.

In 1960 and in prior years, as a matter of established corporate practice, if any shareholder wished to sell any of his RMC stock to the company he had to obtain the approval of M. E. Rinker, Sr., RMC's chief executive officer. Throughout all the years, including 1960, there was a well-established corporate policy to encourage employee ownership of RMC stock and to encourage shareholders to continue to hold their shares. At times M. E. Rinker, Sr., declined to authorize the corporate purchase of the stock and instead personally loaned money to the shareholder-employee who desired to sell his stock to the company. If the shareholder's reason for the sale was prompted by a real financial need M. E. Rinker, Sr., generally would authorize the corporate purchase.

The language used by M. E. Rinker, Sr., and the board of directors in the 1960 resolution merely reduced to writing the corporate policy mentioned above, namely, that the corporation generally would be receptive to request by a shareholder-employee to sell his RMC stock in the event of a real financial need.

This policy extended to all stock, and it was immaterial whether the stock had been purchased by the stockholder or distributed to him as a stock dividend.

■ The resolution of June 6, 1960, was not intended to alter and did not change the right of the corporation, of M. E. Rinker, Sr., or of any appropriate corporate officer, to refuse to authorize the purchase of company stock from the RMC shareholder. The resolution says that the dividends "may" be cashed at the "request" of the shareholders, not that they "shall" be cashed at the "demand" of the shareholders. It is clear from this record, and I find as a fact, that the corporate officers reserved the right to reject any stock tendered by a stockholder during the year in question, just as they had done during prior years.

The resolution in question was written by laymen and was not reviewed by any lawyers, accountants or other professional advisers. While the intended meaning might have been more artfully phrased, the court is convinced, taking into account all the facts and circumstances, that the resolution did not give the shareholders the right to choose between the distribution of stock or cash, or to convert stock into cash.

It is evident from the facts of this case that the distribution in question was not motivated in any manner by tax considerations. Furthermore, there was no prior agreement or understanding between the corporation and any of the stockholders that any redemption would take place, or that any stockholder would receive cash in lieu of his dividend stock.

Plaintiffs have clearly established that there was no attempt here to effect a distribution of corporate earnings through the guise of a stock dividend, and that the stock dividend was not a subterfuge for a cash distribution. The fact that only 57 shares of the 5,439 dividend shares distributed were redeemed subsequent to July 15, 1960, from a continuing shareholder supports the finding that there was no intention to make a distribution of corporate earnings to any stockholder, and also indicates that neither the shareholders nor the company believed that the 1960 resolution gave the shareholders an election to receive anything other than stock. In this connection, it is also of some significance that the majority stockholder, M. E. Rinker, Sr., has never sold any of his stock to the company.

■ The defendant seeks to stretch section 305(b) beyond its terms. It asserts that the distribution of a stock dividend, followed by its redemption, will permit a stockholder to receive a cash distribution at a capital gains rate, and concludes that section 305(b) should be applied to bar that result. That argument is based upon an erroneous premise. Here, if plaintiff does sell his dividend stock to the corporation at some later date the character of the gain or loss resulting from such redemption will be determined at that time by reference to sections 301(a) and 302 of the 1954 Code. Choate v. Commissioner of Internal Revenue, 129 F.2d 684 (2d Cir. 1942). If the redemption proceeds distributed to this plaintiff are essentially equivalent to a dividend they will be taxed as such. No tortured application of section 305(b) is warranted to effect a premature tax.

■ Plaintiffs have established that in substance as well as in form a stock dividend was declared and distributed and that the resolution in question did not in any manner grant to the stockholders the election or the right to receive or to compel at any time a distribution of cash. It follows that the distribution in issue is not taxable under the provisions of section 305(b) of the 1954 Code.

This memorandum of decision shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.