COMMISSIONER OF INTERNAL REVENUE v. MURRAY.

No. 210, Docket 21242.

United States Court of Appeals Second Circuit.

May 20, 1949.

Louise Foster and Theron L. Caudle, Washington, D. C., for petitioner.

Irving B. Stewart, Carl J. Austuan, and S. J. Lance, New York City, for respondent.

Harry J. Rudick, New York City, and Ray Palmer Baker, Jr., New York City, filed a brief as amici.

---

Before L. HAND, Chief Judge, and SWAN and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Chief Judge.

The Commissioner appeals from an order of the Tax Court which expunged a deficiency assessment levied upon the respondent's income and victory tax for the year 1943. The questions are (1) whether under Section 22(k) of the Revenue Act of 1942 [1] payments made by her former husband to her in 1943 should be included within her gross income; and (2) whether she was entitled to a personal exemption under Section 25,[2] as the "head of a family." The facts, which are not in dispute, were as follows. The taxpayer was married in 1924 to William B. Murray and the couple had a son two years later, who proved to be their only child. The marriage ended in a separation before January 13, 1934, on which day the spouses made an agreement for the maintenance of the taxpayer and the child, the only provision of which important here is that, after the child reached the age of fourteen, the husband agreed to pay the wife 25% of his income with a minimum of $1445 and a maximum of $5200. There was also a stipulation as to the support of the child which need not concern us. In September, 1934, the wife sued for a divorce which the court granted in December of that year and which gave her custody of the child and incorporated the payments provided in the agreement of January, 1934, as the provisions for her support and that of the child. The husband paid her $2600 a year—the agreed minimum under another provision of the agreement—until the end of 1937; but early in 1938 at his suggestion the spouses entered into a new contract which abrogated the provisions of the first for alimony and the support of the child, and substituted in their stead promises by the husband that, until the wife should remarry, he would pay her a flat sum of $85 a week. This contract also provided that the wife might have the divorce decree of 1934 modified to accord with the new terms, which she might enforce in any lawful way. She never did apply to the court for modification of the decree; but the husband made the payments in question: i. e., those for the year, 1943, in accordance with the contract. There was no evidence as to the amount of the husband's income in that year. The Tax Court held that the agreement of 1938 was not "incident" to the divorce, because it had been entered into voluntarily by the spouses, and had not been incorporated in any decree of divorce. It also held that the petitioner was head of a family within the meaning of § 25(b) (1), and was therefore entitled to an exemption. For these reasons it expunged the deficiency.

As a new question we are not prepared to say that the phrase, "a written instrument incident to such divorce or separation," should be read as "incident to such divorce or separation decree." However, the Tax Court had already held that it should be;[3] we will accept that reading for the purposes of this appeal; and it follows that any payments made by the husband in 1943 under the contract of 1938 were not in discharge of any "legal obligation * * * imposed * * * under a written instrument incident to" a "divorce." In New York spouses who have already separated may by agreement fix the alimony which the husband must pay in discharge of his marital obligations, and, the contract will be conclusive upon them, and invulnerable except to those attacks to which any contract is vulnerable.[4] Nevertheless, it is only a contract, and as such it is enforceable only by those sanctions which are available to the promisees in all contracts. On the other hand, if its terms are incorporated in a matrimonial decree, they may be enforced by the much more drastic sanctions which such decrees carry, and they become "legal obligations

---

[1] Section 120(a), Title 26 U.S.C.A. § 22(k).

[2] 56 Stat. 827, 828; Title 26 U.S.C.A. § 25.

[3] Dauwalter v. Commissioner, 9 T.C. 580.

[4] Galusha v. Galusha, 116 N.Y. 635, 22 N.E. 1114, 6 L.R.A. 487, 15 Am.St.Rep. 453; 138 N.Y. 272, 33 N.E. 1062

* * * under such a decree"—that is a decree in "a decree of divorce or of separate maintenance." It is true that such a contract, even when so incorporated, still remains subject to change by the mutual consent of the spouses, like any other contract, but that affects only the remedies open to them as promisees; it has no effect on the decree or on the remedies available under the decree. A matrimonial court is free in the husband's favor to disregard the agreed terms, if they become oppressive,[5] because no agreement between the parties can invade the power of the court to make such changes as justice may demand. Moreover, the same relief is open to the wife, if the occasion be pressing enough,[6] although apparently it is more difficult for her to secure an increase than for the husband to secure a reduction.[7]

Thus, if, as we are assuming, the agreement of 1938 was not "incident" to the divorce, the only "legal obligation" which was "imposed upon" the "husband under" the "decree" was to make the payments provided by the contract of 1934, which was incorporated in the decree, and it would follow that, if the taxpayer had proved that the payments in 1943 were greater than those due under that contract, any excess ought not to have been included in her gross income. The difficulty is that she did not prove that any part of the payments of 1943 were in excess of those still "legal obligations" under the decree of 1934. Weekly payments of $85 come to $4420 a year, which was considerably less than the maximum $5200 provided under the decree. It is of course true that that decree bound the husband to pay only 25% of his income and that $4420 is 25% of $17,680; but the record contains no information as to the amount of his salary in that year, and, as a taxpayer, the burden was on her to show by how much, if anything, she received more than 25% of the husband's income.

■ The second question is whether she was "the head of a family,"[8] the answer to which depends upon the proper reading of the regulation,[9] which has for many years defined that phrase to mean one who "supports and maintains in one household one or more individuals who are closely connected with him by blood relationship." In this case the only dispute is whether the taxpayer supported or maintained her son, who lived with her and to whose support she contributed very substantially. The position of the Treasury is that, although the regulation does not require a divorced wife to be the sole support of her children, she must contribute at least one-half of their expenses, which this taxpayer at bar did not prove. The Board of Tax Appeals twice decided, en banc, that the proper test was whether the wife had "substantially" contributed,[10] and the Tax Court has accepted these rulings as authoritative in the case at bar. Perhaps, as an original question, it would have been more natural to read the regulation as requiring the "head of a family" to contribute the entire support of his dependents; but nobody suggests that now, and the issue is only as to what the amount must be. We can see no reason to disturb the conclusion of the Tax Court on an issue which it is preeminently qualified to decide, and as to which its ruling does not overrule any formal administrative interpretation.

The order of the Tax Court, so far as it has granted an exemption to the respondent as the head of a family, is affirmed, but, so far as it otherwise relieved her from the payment of a tax on the sums received from her husband, is reversed and the proceeding is remanded for a computation of the tax.

---

[5] Goldman v. Goldman, 282 N.Y. 296, 26 N.E.2d 265.

[6] Kraunz v. Kraunz, 293 N.Y. 152, 56 N.E.2d 90.

[7] Schmelzel v. Schmelzel, 287 N.Y. 21, 38 N.E.2d 114.

[8] 56 Stat. 827, 828, § 25(b) (1); Title 26 U.S.C.A. § 25.

[9] Treasury Regulations, 111, § 29.25-4.

[10] Mack v. Commissioner, 37 B.T.A. 1101; Carson v. Commissioner, 47 B.T.A. 163.