**MAHANA v. UNITED STATES.**
No. 48739.

United States Court of Claims.
Feb. 6, 1950.

Henry Woog, New York City, for plaintiff.

J. W. Hussey, Washington, D. C., with whom was Assistant Attorney General Theron Lamar Caudle, for the defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D.C. on the brief.

Before JONES, Chief Judge, and MADDEN, HOWELL, WHITAKER and LITTLETON, JJ.

MADDEN, Judge.

The plaintiff sues to recover income taxes paid by her for the years 1943, 1944 and 1945. She filed timely claims for refund which were denied by the Commissioner of Internal Revenue. The money received by her, the taxability of which receipt she contests, came to her, partly directly, and partly through payments by a trustee or depositary, from her husband whom she had divorced.

The plaintiff and George S. Mahana were married in 1893. They separated in 1922. In 1923 she brought an action in New York, where they both resided, for a legal separation and separate maintenance. While this suit was pending, the spouses on November 12, 1923, made a written agreement that the husband would transfer certain named securities to the Guaranty Trust Company of New York, in trust to pay the

income to the plaintiff during her lifetime "by way of alimony and in lieu thereof and for her separate maintenance and support." If the income from the securities did not amount to $17,500 per year, the husband would make up the deficit by payments to the trustee for transmission to the plaintiff. If there was an excess of income, it was to be paid to the husband. If the plaintiff's mother survived her, she was to be paid $6,000 per year for life. Upon the death of the survivor of the plaintiff and her mother, the trust was to terminate and the securities were to be returned to the husband. If the securities did not in any one year yield at least $15,000, the husband agreed to add sufficient securities to bring the yield up to $17,500. The parties mutually released to each other all interest in the other's property and in any rights growing out of their marital relation. The agreement provided that it should in no wise prejudice any right which either party might have to institute divorce proceedings for misconduct theretofore committed, and that the payments to be made under the agreement were to be in no way affected by any decree of divorce, or by any subsequent marriage of either of the parties to a third party.

On December 1, 1923, the plaintiff signed a complaint in a New York court asking for an absolute divorce on the ground of her husband's adultery. An interlocutory decree was granted on March 8, 1924, which became final on November 6, 1924. On November 26, 1924, the former husband, George Mahana, transferred his residuary interest in the trust which he had set up for the plaintiff, in irrevocable trust for his second wife and his infant child by her.

In 1929 disputes arose between the plaintiff and her former husband as to which one should pay the state and federal income tax on the payments which the plaintiff was receiving under the 1923 agreement. The plaintiff instituted a suit in a New York court to construe and enforce the agreement of 1923 according to what she claimed to have been the intent of the parties. Her complaint alleged that her husband was to have paid the income taxes upon the payments to her to the extent that they would

have been payable "if said $17,500 would have been her sole income." Her complaint raised other questions concerning the trust. This suit was settled by an agreement of June 28, 1933. By this agreement, the former husband agreed to pay the plaintiff the amounts by which her state and federal income taxes were increased by reason of her receipt of the $17,500 pursuant to the 1923 agreement. In connection with the new agreement, he deposited additional securities with the trustee, but he did not put them into the trust created in 1923. The income from them was to be used to supplement the income from the securities in the 1923 trust, if necessary, but he was to have complete power, so long as he was not in default under his agreement, to order the securities so deposited to be sold or exchanged.

The plaintiff paid federal income taxes for the year 1924 upon her income under the agreement, but these taxes were refunded to her by the Government, upon her claim for refund. She paid no such taxes from 1932 to 1942. The record does not show what happened between 1924 and 1932. In the Revenue Act of 1942, 56 Stat. 816, Section 120, added to the then existing law, Sections 22(k), 23(u), and 171(a) of the Internal Revenue Code, 26 U.S.C.A. §§ 22(k), 23(u), 171(a). Section 22(k) provides: "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includable in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includable in the gross income of such husband. * * *"

Section 23(u) authorized a husband to deduct from his taxable income the payments made taxable to the wife by Section 22 (k). Section 171 (a) provided: "There shall be

included in the gross income of a wife who is divorced or legally separated under a decree of divorce or of separate maintenance the amount of the income of any trust which such wife is entitled to receive and which except for the provisions of this section, would be includable in the gross income of her husband, and such amount shall not, despite section 166, section 167, or any other provision of this chapter, be includable in the gross income of such husband. * * *"

As shown by our findings 12, 13, and 14, the $17,500 received by the plaintiff in each of the years in question, 1943, 1944, and 1945, consisted of (1) money paid by the trust company out of the income of securities held by it under the 1923 agreement; (2) money similarly paid out of the income of securities held by it under the 1933 agreement; (3) money paid by George Mahana to the trust company to make up the deficit of income from the first two sources, which money was then paid by the trust company to the plaintiff. In addition, in each of the years George Mahana paid directly to the plaintiff the amounts by which the plaintiff's income taxes had been increased by her receipt of the $17,500. Since some of these payments were made directly by the former husband, and some were made from a trust created by him for that purpose, both Sections 22(k) and 171(a) are involved.

 The plaintiff's first contention is that the legislation referred to, imposing an income tax on alimony, is unconstitutional. She says that it is not income; therefore the Sixteenth Amendment does not authorize its taxation. The argument is, at first, surprising. A large sum of money comes into the plaintiff's hands. One wonders why it is not "income" in the sense of the Sixteenth Amendment. It is income to spend, to live on, to save. Is it not also income to tax, if Congress sees fit, as it has, to tax it? But there is something to be said for the plaintiff's contention. In the case of Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211, the court held that alimony paid to a divorced wife was not taxable to her as income. The legislation then in force

was the Income Tax Act of 1913. It did not expressly either include or exclude alimony from its definition of what income should be taxed. The court used language which indicated that it thought that alimony was not income. The court did not purport to be deciding a constitutional question, but only a question of the interpretation of the Income Tax Act of 1913. It would have been hard to believe that Congress intended to tax the receipt of alimony by the divorced wife, when the law had already taxed the husband upon his receipt of the income from which he paid the alimony, except in the infrequent case when alimony was paid out of the husband's capital.

The plaintiff points to cases such as Douglas v. Willcutts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, and Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, in which the Supreme Court has said that Congress, in the various revenue acts, has manifested its intention to use to its fullest extent the power granted it by the Sixteenth Amendment. If we take these expressions literally, then Gould v. Gould, supra, would have to be regarded as a decision that alimony could not be taxed because it was not income in the sense of the Sixteenth Amendment. But we think that even the Supreme Court should not be taken so literally when the consequence would be to nullify an act of Congress, the intention of which is clear. The Supreme Court has also said that the meaning of the word "income" in the Sixteenth Amendment and in the acts of Congress pursuant to the amendment, is that given it in common speech and every-day usage. Old Colony Railway Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; United States v. American Trucking Association, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. In every-day usage the plaintiff, receiving large sums of money currently from a man who ceased to be her husband more than twenty years ago, would be regarded as having an income.

 We come then to the question whether the statutes, properly interpreted, tax the plaintiff's income. The plaintiff concedes that, so far as concerns the money

received by her as the yield of the securities placed in trust under the 1923 agreement, Section 171(a) is applicable, if it is constitutional. We have quoted the section, and it requires only that there be a divorce, a trust, and the receipt from the trust of income which would have been taxable to the husband if it had not been made taxable to the wife by the section. As the plaintiff properly concedes, these conditions are fulfilled as to the yield of the 1923 trust. We think they are fulfilled also as to the yield from the additional securities deposited with the trustee in 1933, to supplement the income of those previously deposited. The plaintiff says that they were not placed in trust, but only "deposited." But they were deposited "pursuant to the agreement dated November 12, 1923, * * * to be held, sold, exchanged or otherwise disposed of by you, and in case of sale, the proceeds thereof invested * * *." The trust company was directed to pay the income from the securities to the plaintiff, if necessary to make up the agreed $17,500. The deposit of these securities was a deposit in trust. The apparent reason why they were not added to the 1923 trust was that, in the meantime, the plaintiff's former husband had conveyed his residuary interest in that trust to his second wife and his infant child by her, and he did not want the additional securities to be covered by that conveyance. The new securities were in a different trust, but it was a trust to pay alimony and was covered by Section 171(a).

As to the money which the former husband paid to the trustee to make up the deficit left when the two trusts did not yield $17,500, we think that although this money came to the plaintiff from the trustee, it was not "the income of any trust" within the meaning of Section 171(a). The trustee was a mere intermediary who accepted a deposit and paid out a similar amount to the plaintiff, not as income of a trust but merely pursuant to the agreement to perform this service. If, then, these payments were taxable to the plaintiff, it was because they were covered by Section 22(k) which we have quoted above. The plaintiff urges several reasons why they should not be regarded as covered by that section. The sec-

tion applies to "periodic payments (whether or not made at regular intervals)." Although this language is somewhat self-contradictory, we think that it is complied with when the payments are agreed to be made and are made whenever specified external or objective conditions occur. Here the payments were to be made whenever the income of the trust was less than $17,500.

Section 22(k) requires that the payments, to be taxable, must be made: " * * * in discharge of, a legal obligation, which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation * * *."

The plaintiff says that the written instrument by which her then husband agreed to make the payments here in question was not "incident to such divorce." We think it was so incident. The plaintiff had pending a suit for legal separation and separate maintenance at the time of the agreement. The agreement said that it was for her separate maintenance and support, that it was not to be affected by any decree of divorce obtained by her, and that it was not to prejudice the right of either party to seek a divorce for misconduct which antedated the agreement. Thirteen days after the agreement was executed, the plaintiff signed her complaint asking for a decree of divorce for her husband's adultery. We have no doubt, from the timing and circumstances of the agreement, that it was the usual settlement out of court of the property rights of the parties when a divorce is contemplated. Both the plaintiff and her former husband testified in this case and neither denied what the circumstances indicate to have been the fact. The payments made by the former husband to make up the deficit were, then, periodic payments, made pursuant to an agreement incident to the parties' divorce. The payments were taxable income to the plaintiff, under the provisions of Section 22(k).

The question remains as to whether the former husband's payments to the plaintiff by way of reimbursement to her of the amounts which she was obliged to pay

as income tax on her alimony, after the enactment in 1942 of Section 22(k), were also taxable to her under Section 22(k). The plaintiff contends that they were not, because they were paid pursuant to the 1933 agreement, which was made nine years after the divorce and was not, the plaintiff says, "incident to such divorce" in the sense of the statute. We think that the 1933 agreement was incident to the divorce. We have held above that the 1923 agreement was incident to the divorce. The 1933 agreement was, as we have seen, made in settlement of a suit by the plaintiff for the construction and enforcement of the 1923 agreement. She contended, in that suit, that her former husband was, under the 1923 agreement, obligated to reimburse her for income taxes paid "as if said $17,500 would have been her sole income." In the 1933 agreement, her former husband promised to do more than that; he promised to reimburse her by the amount which her income taxes were actually increased by her receipt of the $17,500. For this concession, he received concessions from her which made him willing to enter into the 1933 agreement. But the whole agreement was made to clarify the 1923 agreement, so that the disputes as to its meaning which had, in 1933, been going on for some years, could be avoided. The plaintiff had no rights against her former husband in 1933 except those that were given her by the 1923 agreement. The rights which she got under the 1933 agreement were, with mutually satisfactory additions and subtractions, those to which she was entitled under the 1923 agreement. We think, therefore, that the reimbursements to her of her income taxes paid by her on her alimony were made pursuant to a written instrument which was incident to her divorce.

The Government urges, as an additional reason for reaching the same conclusion, that we interpret the language of Section 22(k) as meaning that the written instrument referred to need only be incident to the fact that there had been a divorce, and not to the decree of divorce. The Tax Court, in Dauwalter v. Commissioner, 9 T.C. 580, has rejected this interpretation. Compare Commissioner v. Murray, 2 Cir.,

174 F.2d 816. See also Cox v. Commissioner, 3 Cir., 176 F.2d 226, for a treatment of this question, and of the history and purpose of the 1942 legislation relating to the taxation of alimony. In view of our conclusion that the 1933 agreement, through its connection with the 1923 agreement, was incident to the decree of divorce, we do not pass upon this contention of the Government as to the interpretation of Section 22(k).

The plaintiff's petition will be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER, and LITTLEJOHN, JJ., concur.