## IZRASTZOFF v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. TOPPING et al.

### Nos. 34, 35, Dockets 22047, 22048.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1951.

Decided Jan. 8, 1952.

William W. Lowell, of New York City, for petitioner Margaret C. Izrastzoff.

Richard D. Harrison, Washington D. C. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, A. F. Prescott, and George D. Webster, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Henry Mannix and Francis H. Pinkham, both of New York City, for respondents Daniel Reid Topping et al.

Before CHASE and CLARK, Circuit Judges, and COXE, District Judge.

CLARK, Circuit Judge.

These petitions for review present a narrow issue raised by the amendments of 1942 to the Internal Revenue Code making alimony and separate maintenance payments taxable as income to the divorced wife and deductible from his income by the husband. The question here presented is as to how closely a separation agreement under which the payments were made must be tied to the divorce itself. Here the agreement somewhat preceded the divorce under circumstances hereinafter stated. The controlling statutory words, found in the added § 22(k), 26 U.S.C.A. § 22(k),

state that where the "periodic payments" there made "includible in the gross income of such wife" and "not includible" in that of the husband are not provided for in the divorce or separation decree itself,[1] they must be in discharge of a legal obligation incurred by the husband "under a written instrument incident to such divorce." This section is supplemented by other provisions to the effect that currently distributable payments to a beneficiary are deductible by an estate or trust, I.R.C. § 162(b), 26 U.S. C.A. § 162(b), and that a divorced wife as described in § 22(k) is such a beneficiary, I.R.C. § 171(b), 26 U.S.C.A. § 171(b). See Laughlin's Estate v. C. I. R., 9 Cir., 167 F.2d 828. In a reasoned decision by Judge Tietjens, unanimously approved by the entire court, 15 T.C. 573, the agreement here under consideration was found within the statutory terms so that her receipts during the years 1942 and 1943, the first years in which the new amendment became effective, were taxable as income to her and deductible from gross income by the husband's estate. To overturn this decision, the wife has brought her petition for review, opposed here by both her husband's administrators and the Commissioner of Internal Revenue, though the latter has also filed a protective petition—against the event that the wife might be successful—for review of that portion of the decision holding the payments deductible by the estate.

The petitioning wife Margaret Izrastzoff and Daniel G. Reid were married in 1910. She was 26; he was 51 and notably wealthy. They separated on January 19, 1919, after at least three years of increasing disruption of marital bliss. She never saw him afterwards and he died in 1925. The sequence of succeeding events after the informal separation is crucial. On leaving Daniel, Margaret went to live in a New York hotel, where was also living a certain man whom she had met the previous November and who figured as corespondent in Daniel's later action for divorce. Daniel almost immediately hired two detective firms to follow his wife and report on her activities. On February 28, 1919, Margaret instituted a suit for legal separation in the Supreme Court of New York and shortly thereafter counsel for the two parties began negotiations for a financial settlement. These resulted in an agreement, dated March 27, 1919, and executed by the parties during the next nine days, which provided for an initial payment to her of $200,000 and subsequent annual payments for life of $30,000. In early April, Margaret changed hotels, as did her acquaintance; and later in the month both journeyed to San Francisco. Then, on May 12, 1919, Daniel began a suit for divorce in the Supreme Court of New York alleging his wife's adultery on information and belief. Margaret counterclaimed, and in October filed a divorce action of her own later marked off the calendar by stipulation. The first action came to trial in February and March of 1920. Daniel introduced no evidence, and interlocutory judgment of divorce was entered in petitioner's favor on March 22, 1920, and the decree became final three months later. In neither action did petitioner ask for alimony; instead she relied on the agreement. In 1921, Daniel established a trust to secure the payments due her under the agreement. In 1926, after her husband's death, she married the man with whom she had been friendly.

For the resolution of our problem here, we may start with the basic facts, conceded by all, that these are periodic payments received by a divorced wife in discharge of a legal obligation incurred by the husband because of the marital relationship. The estate and the Commissioner then go on to assert that the obligatory written instrument was also "incident to such divorce." But the petitioning wife contends that such cannot be the case unless the parties mutually intended a divorce at the time of its execution and that there was no competent evidence to support a finding of such intent. We conclude otherwise—with the Tax Court.

---

1. Such a decree is a necessity for the application of the statute, as we have held. Smith v. C. I. R., 2 Cir., 168 F.2d 446; Daine v. C. I. R., 2 Cir., 168 F.2d 449. 4 A.L.R.2d 248.

First, the evidence offered by the estate was entirely competent. The objection of irrelevancy to the testimony of one of Reid's close friends that Reid had stated his intent to effect a divorce is not well taken, nor are the objections on similar grounds to the statements of the detectives hired by Reid in February and March concerning their reports of petitioner's adultery and her aim to establish divorce domicile in California. Whether the March agreement was "incident to" the later divorce is a question of many facets, among which clearly is the contemporary understanding of the very parties to it. That Reid hired detectives and expressed his divorce-mindedness to friends is strong evidence of his intent to press matters to their logical conclusion and hence supports the inference that he, at least, thought of the agreement then in process of negotiation as a part of the ultimate settlement erected on a contemplated legal divorce. Nor is the absence of direct evidence that he received the detectives' reports fatal to the admission of their testimony, for receipt by his counsel is sufficient basis from which to infer Reid's reaction to them, in the light of his almost immediate complaint for divorce on the ground of adultery.

Next, we think the evidence of petitioner's concurrent contemplation of divorce quite overwhelming, in spite of her contrary testimony that she "had no idea he would bring a suit against me." The rapid sequence of events following the separation, including her own action for separation begun on February 28, the immediate institution of the negotiations that led to the agreement of March 27, and the beginning of the divorce action less than a month and a half later on May 12, is sufficient evidence that the possibility of a divorce in the relatively near future was a real one for petitioner in March, 1919. This inference is heavily underscored by the fact that the agreement itself carefully provided for the effect on the settlement that a divorce decree should have, affirmatively preserving petitioner's right to bring such an action, or assert any defense or counterclaim in any action brought against her.[2] It is therefore difficult to credit her claims that the proceedings which became a reality in May were not a contemplated possibility a month and a half earlier.

Moreover, we are disposed to accept the argument that her intent is not the determinative factor. Even if she were completely immune from thoughts of an outcome which a large part of society accepts as the normal denouement of marital disruption, the evidence would still support the conclusion that the agreement was "incident to" the divorce. There is no requirement in § 22(k) of positive proof that both parties jointly and positively anticipated legal divorce or separation at the moment they signed the agreement. As illustrated by

---

2. The main agreement for the property settlement provided specifically that if she sued for separation or divorce, she would make no claim for allowances, alimony, or counsel fees, that she accepted the provisions therein in lieu of and in full satisfaction and discharge of any and all claims against Mr. Reid and his estate in such suit or otherwise, and that the agreement should not be abrogated or impaired by a divorce. A supplemental agreement contained this further provision: "Mrs. Reid hereby expressly agrees that she will not institute, either in the United States or in any foreign country, any action or suit for divorce or separation or for any cause whatsoever existing at any time before or at the date of this agreement which would reflect injuriously on the character, morals or reputation of Mr. Reid for acts done in the past, provided, however, that she is at liberty to institute, either in the United States or in any foreign country, any action or suit for divorce or separation for desertion or injure grave as understood by the French Courts, subject to the limitation that any such action shall not reflect injuriously on the character, morals or reputation of Mr. Reid for acts done in the past, and Mrs. Reid agrees that any violation of this covenant on her part shall terminate any and all liability or obligations on the part of Mr. Reid to make to her any further payment or payments under and pursuant to the terms of said other Agreement between the parties hereto bearing even date herewith. But this covenant shall not be construed to prevent Mrs. Reid from asserting any defense or counterclaim as she may be advised in any action brought against her by Mr. Reid."

this case, such a construction would force the Commissioner to rely on an interested party's recollection of her own state of mind of some thirty years past concerning negotiations in which she played no real part. See Powell v. C. I. R., 1 Cir., 94 F.2d 483, 486. It would make meaningless the concrete evidence of events and the agreement itself, which are far from mute in pointing to the connection between agreement and subsequent legal separation or divorce. Legislative emphasis upon a mutually coexistent intent for divorce is not to be assumed in the absence of an expressed requirement, particularly in view of the well understood danger that an appearance of collusion between the parties might prevent divorce in many jurisdictions. Such legislative history as is available stresses only the manifest fairness of charge to the wife and deduction by the husband of payments not only for alimony, but also for separate maintenance provisions "in the nature of or in lieu of alimony or an allowance for support." House Ways and Means Committee, 77th Cong., 2d Sess., Rep. No. 2333, pp. 46, 71, 72; Senate Finance Committee, 77th Cong., 2d Sess., Rep. No. 1631, pp. 83–85. Hence Lerner v. C. I. R., 15 T.C. 379, 386, relied on by petitioner, goes overfar in intimating a requirement of anticipation of divorce by both parties at the time, although the decision is quite unexceptional, since there divorce was only a faint and undiscussed possibility.

Here the Tax Court's conclusion of law is supported by both the showing of the parties' states of mind and the events and agreement itself. We need not attempt any final definition of "incident to," a phrase which courts have found difficulty in clarifying.[3] For here the evidence, viewed either together or apart from that portion objected to by petitioner, seems quite clear that the agreement was "incident to" the divorce,

whether or not both parties were actively planning such action at the moment they executed it. The proximity in time of the settlement and the institution of proceedings, Reid's efforts to collect evidence of his estranged wife's infidelities unexplainable save in the light of plans for legal action, the wife's relationship with the future corespondent, and the provisions for divorce incorporated in the agreement—all require the inference that execution of the agreement was based upon the contemplation of divorce as a real possibility and an intent that this agreement should become part of such an ultimate settlement between the parties. See C. I. R. v. Murray, 2 Cir., 174 F.2d 816; Blum v. C. I. R., 7 Cir., 177 F.2d 670.

Decision affirmed.

---

3. Thus, "incident to" has been paraphrased as "in connection with," Tuckie G. Hesse, 7 T.C. 700, 704, Robert Wood Johnson, 10 T.C. 647, 652; "part of the package of the divorce," Cox v. C. I. R., 3 Cir., 176 F.2d 226, 229, Lerner v. C. I. R., 15 T.C. 379, 386; "contemplated at the time of executing the agreement," George T. Brady, 10 T.C. 1192, 1197; "usually or naturally and inseparably depends upon, appertains to, or follows," Ballantine, Law Dictionary 623, 1930 Ed. We need hardly add that the result here is in harmony with these expressions.