## NEWTON v. PEDRICK.

United States District Court
S. D. New York.
March 12, 1953.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff; Randolph E. Paul and Carolyn E. Agger, Washington, D. C., and Herrick K. Lidstone, New York City, of counsel.

Myles J. Lane, U. S. Atty., S.D. New York, New York City, for defendant; Lawrence G. Greene, Asst. U. S. Atty., New York City, of counsel.

RYAN, District Judge.

This suit commenced in October, 1948, against the Collector of Internal Revenue for the Second District of New York, since deceased, and continued against the administratrix of his estate, is to recover an additional assessment of $11,293.04 levied on plaintiff's 1944 income.

Plaintiff in his return for the calendar year 1944 deducted as alimony $11,000 paid by him to his former wife, Alice L. Newton under an agreement made in

1930. (P.'s Ex. 6; "A" annexed to the complaint).[1] On February 18, 1948, following the receipt of a deficiency notice from the Collector dated January 15, 1948 (P.'s Ex. 7; "B" annexed to the complaint), plaintiff paid $13,089.91, of which $11,293 04 was attributable to the disallowance of the $11,000, alimony deduction. Plaintiff, on March 25, 1948, filed a claim for refund (P.'s Ex. 9; "D" annexed to the complaint), and subsequently commenced this action.

The question for determination is whether this payment of $11,000 by plaintiff to his former wife should have been allowed by the Commissioner of Internal Revenue as an item of alimony deductible under 26 U.S.C.A., Sec. 23(u), as defined by 26 U.S.C.A., Sec. 22(k).

The answer turns upon the construction to be given an agreement executed by plaintiff and his former wife on September 22, 1930. The following facts leading up to the making of this agreement have been stipulated. (P.'s Ex. 2). No testimony was offered on trial.

Plaintiff and Alice L. Newton were married in August, 1917. In anticipation of divorce and following the service upon plaintiff of an order of non-conciliation issued by the Civil Tribunal of the First Instance of the Department of Seine, France (where the parties were domiciled at the time), the parties on July 23, 1924 entered into a "Trust Agreement" providing for the support of the wife and their two minor children (P.'s Ex. 2–A; "E" annexed to the complaint), which I shall refer to below as the "Trust Agreement of 1924." Five days later, on July 28, 1924, the French court issued its decree granting a divorce "between the spouses Newton, with all legal consequences at the request and in favor of the wife," (P.'s Ex. 2–B; "F" annexed to the complaint). There was no provision in the decree for alimony and no reference made in it to the trust agreement of 1924. Custody of the children was awarded by the decree to Alice L. Newton. The jurisdiction of the court granting the divorce is not questioned in this suit.

Alice L. Newton remarried on August 25, 1926 and became Alice Newton Heath. Two years later—four years after the divorce—on May 18, 1928, she and plaintiff entered into a second agreement, designated by them as the "Property Agreement" (P.'s Ex. 2–E; "G" annexed to the complaint) "amending the trust agreement of July 23, 1924" (P.'s Ex. 2), and providing for the payment of an annual sum to Alice Newton Heath in addition to what she was receiving under the trust agreement of 1924. This second agreement I shall refer to as the "Property Agreement of 1928."

Finally, on September 22, 1930 plaintiff and his former wife executed a third agreement, (this, too, was designated by them as a "Property Agreement"), "amending the trust agreement of July 23, 1924" (P.'s Ex. 2), but revoking the property agreement of 1928 and providing for the payment of an annual sum to Alice Newton Heath in addition to the income payable to her under the trust agreement of 1924, (P.'s Ex. 2–F; "H" annexed to the complaint); this I shall refer to as the "Property Agreement of 1930." It was under its terms that payment was made by plaintiff to his former wife of $11,000 which was deducted by him as alimony in his 1944 return, the disallowance of which gives rise to this suit.

Although the deductibility of this payment must be determined by the interpretation to be given this last agreement of 1930, analysis of the agreements preceding it is essential to an understanding of what the parties covenanted to do under its terms.

*The Trust Agreement of 1924:*

The purpose of this agreement made between plaintiff, as first party, certain

---

1. Since the numbering on trial of the exhibits offered by plaintiff is somewhat confusing, I have renumbered them and now refer to them both under the numbers I have given them and the letter given them by plaintiff as exhibits annexed to his complaint.

named trustees, as second party, and Alice L. Newton, as third party, as recited in its preamble was "to make provision for the support of the Third Party and of the children of the said First and Third Parties." At the date of its making, the parties were living in Paris, France, separate and apart. It is undisputed that it was made in anticipation of divorce.

A trust fund was created by the agreement to accomplish its expressed purpose. The principal of the trust consisted of $400,000 of plaintiff's capital contribution to the partnership of Hallgarten & Company; so invested it returned an income of 6% per annum. The trust agreement was expressly subject to the partnership agreement whereby plaintiff was obligated to make additional contribution in the event that the corpus of the trust became depleted.

It provided that Alice Newton until her death or remarriage was to be paid the interest and income on the trust fund of $400,000 or a total of $24,000 annually. It further provided that upon her remarriage the corpus of the trust was to be divided into three funds, each to constitute a separate trust, consisting of one-fourth, one-fourth and one-half of the corpus, each to be continued to be held by the trustees for the benefit of the two children and Alice Newton respectively, until their death. Each child was to be paid the income from her respective one-fourth part, not exceeding $5,000, and the balance of the income from such part in excess of this was to be paid to Alice Newton. She was to receive this surplus in addition to the income payable to her from her one-half part, until her death, at which time it was provided that the trust in her favor was to terminate and the corpus of her trust paid over to the two children.

Reduced to figures and calculated on a 6% return, upon her remarriage in 1926, the "Trust Agreement of 1924" provided that Alice Newton was to receive annually $14,000 for herself and $5,000 for each child, the custody of whom she retained.

It was further provided in Paragraph Eleventh that the agreement was to be construed in accordance with the laws of the State of New York and the rights and remedies of the parties determined as though they were residents of this state executing it in New York.

*The Property Agreement of 1928:*

In the first paragraph of this agreement made in New York between plaintiff and his former wife (now designated as Alice L. Heath) it is recited that the trust agreement of 1924 making financial provision for Alice L. Newton and the children "is now in full force and effect."

The events leading up to the making of this second agreement and set forth in its preamble are enumerated as the remarriage of Alice L. Newton on August 25, 1926; the execution by the parties "simultaneously with the execution hereof" of a "custody agreement" providing for the custody of the children, whereby plaintiff was to become the guardian of the property of the children and entitled to receive on their behalf the income to which they were entitled under the trust agreement of 1924; and a promise by plaintiff to make further financial payments to his former wife.

It is then provided that in consideration of the respective promises and covenants contained and the obligations by each assumed, plaintiff "in addition to the income that shall be payable to Alice L. Heath under the trust agreement" will pay Alice L. Heath "during the faithful performance of her obligations under the custody agreement" the sum of $6,000 annually during her life, a further payment annually of $2,500 if during such period as she has custody of the children she keeps them in New York State or at a place to be mutually agreed upon, and a sum equal to $1,250 for the maintenance and support of each child during such period of her custody over them.

Further, upon the agreement becoming effective and upon delivery of the children to plaintiff, he agreed to pay his former wife the sum of $5,000 as reim-

bursement for her expenses incurred in the maintenance of the children from February 1 to August 1, 1928. In paragraph Seventh it was further provided that the agreement was not to be binding on either party until the final approval of the Surrogate's Court of New York County to the provisions of the custody agreement.

Neither the custody agreement nor the order of the Surrogate's Court is in evidence, but it appears from plaintiff's statement annexed to his claim for refund (P.'s Ex. 9, "D" annexed to the complaint) that such an order was made by that court on May 22, 1928 appointing plaintiff guardian of the children's property and plaintiff and Alice L. Heath, joint guardians of their person.

*The Property Agreement of 1930:*

In this, the last agreement between plaintiff and Alice L. Heath, reference is again made to the trust agreement of 1924 as being "now in full force and effect," and to the property agreement of 1928 under which plaintiff became the guardian of the property of the children entitled to receive on their behalf the income payable to them under the trust agreement, and under which Alice L. Heath was paid sums "additional to those payable under said Trust Agreement."

The agreement then recites that the parties "simultaneously with the execution of this agreement" (the instant one) have executed a new custody agreement providing for the custody and control of the children, and that the purpose of the parties in executing the instant agreement is their "desire to revoke said Property Agreement of May 18, 1928 and to substitute this agreement in lieu thereof. * * *"

It is then provided that "in consideration of the respective promises and covenants herein contained and the obligations by each assumed" the property agreement of 1928 is "rescinded, cancelled and revoked", and that plaintiff shall pay to Alice L. Heath during her life "in addition to the income payable to her under said Trust Agreement" the annual sum of $11,000; that these payments and any balance due to her under the property agreement of 1928 "shall be apportioned as of the date of the entry of appropriate decrees giving effect to the Custody Agreement executed simultaneously herewith"; and that no change in plaintiff's financial condition shall give either party the right to apply to any court for any increase or reduction in the amounts to be paid and that if any such right should arise "the exercise thereof is hereby expressly waived."

Plaintiff further agreed, upon the execution of the new custody agreement and the entry of an order by the Surrogate's Court of New York County approving it, to pay Alice L. Heath the sum of $15,000 in full reimbursement of her expenses in the guardianship proceedings. It was further provided that not only should this agreement (of 1930) not bind the parties until final approval of the new custody agreement by the Surrogate's Court, but that upon any application to that court by Alice L. Heath for a modification or revocation of the custody agreement or of the decree of that court, "the payments provided for in paragraph 3 hereof, shall, at the option of Maurice W. Newton or his estate, cease and come to an end."

This agreement also was executed in New York.

Neither this new custody agreement nor the Surrogate's Court order approving it is before us, but it appears from plaintiff's statement annexed to his claim for refund (P.'s Exhibit 9; "D" of the complaint) that under it he was to have sole custody of the children. I assume from this and from the fact that as late as 1943 plaintiff was paying Alice L. Heath the sum provided for in the property agreement of 1930, that this agreement became binding upon approval of the custody agreement.

The rights and obligations of the parties under the above agreements are clearly delineated. The trust agreement

of 1924 made specific provision for the support of Mrs. Heath and the children upon the divorce of the parties. By the end of 1932, the entire corpus of the trust created in 1924 had been lost and no income from it was available to be paid Mrs. Heath. (P.'s Ex. 2).

The payment of the additional $6,000 by plaintiff to his former wife under the property agreement of 1928, conditioned as it was on the contemporaneous custody agreement, was the quid pro quo for her relinquishment to plaintiff of guardianship over the property of the children and her consent to joint guardianship of their person. The revocation of this agreement and the making of the property agreement of 1930, increasing the annual sum payable to Mrs. Heath to $11,000, dependent as it was on the new custody agreement, was in exchange for her entire relinquishment of custody and guardianship over the person of the children. This is evident from the mutual waiver of the parties to an increase or reduction in the sums payable and the complete release of plaintiff from his obligation to continue the payments in the event of an application to the Surrogate's Court by Mrs. Heath to reacquire such custody or guardianship.

Although the stipulation of facts (P.'s Ex. 2) speaks of the two property agreements as "amending" the trust agreement of 1924, a reading of them reveals no change in the provisions made for Mrs. Heath individually under that agreement; this agreement is in the subsequent "Property Agreements" referred to as being "in full force and effect" and the payments provided for in the "Property Agreements" are entirely separate and apart from those payable under the "Trust Agreement" and "in addition" thereto. The only "amendment" to the trust agreement to be found in the property agreements relates to the income payable therein for the support of the children, and to this extent only and as a direct result of this change was there any reduction in the moneys payable to Mrs. Heath—the balance in excess of $5,000 payable to the children—(Para. 1, property agreement of 1928)—and even this made up no part of the income allocated to be paid Mrs. Heath under her one-half part of the trust corpus.

For plaintiff to prevail it must be found that the $11,000 payment under the property agreement of 1930 was a "periodic payment(s) * * * subsequent to such decree (of divorce) in discharge of, * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce * * *." 26 U.S.C.A. Sec. 22(k).

It clearly was a periodic payment after a divorce; whether in 1930 plaintiff was under any legal obligation by reason of his prior marital relation and whether the property agreement of 1930 was incident to the divorce is seriously disputed by defendant. It is plaintiff's contention that the property agreement of 1930, by amending the trust agreement of 1924, itself became incident to the divorce, or that in any event the $11,000 payment under it being a lesser amount than that provided for in the trust agreement of 1924 qualified as partial payment and is deductible as an incident to divorce.

The trust agreement of 1924, concededly made in anticipation of divorce and followed by a decree of divorce, met the requirements of the statute and was an instrument "incident to divorce" even though not incorporated in the subsequent decree. Izrastzoff v. Commissioner, 2 Cir., 1952, 193 F.2d 625; Lerner v. Commissioner, 2 Cir., 1952, 195 F.2d 296; Treas. Regs. 111, Sec. 29.22(k)–1; & 103, Sec. 19.22(k)–1.

I have assumed that plaintiff became bound under the property agreement of 1930—upon approval of the contemporaneous custody agreement—and that he was still bound in 1943 when he made the $11,000 payment. Alone, such a contractual obligation is not sufficient. "The broad 'legal obligation' language of the statute would seem to require noth-

ing more than a binding contractual agreement. But courts, interpreting Congress' intent, held that the obligation to pay must be undertaken while there is a 'legal obligation *to support.*'" 1952 Yale Law Journal, Vol. 61, p. 1200, "Taxation of support payments to a divorced spouse under private agreement", citing Cox v. Commissioner, 3 Cir., 1949, 176 F.2d 226; Commissioner of Internal Revenue v. Murray, 2 Cir., 1949, 174 F. 2d 816. In the first of these cases, it was expressly held that an agreement made by the parties eight months after the decree of divorce was not within the statute and was not in discharge of "the general obligation to support, which is made specific by the instrument or decree." 176 F.2d at page 228. In the Murray case [174 F.2d 817], Judge L. Hand, while seemingly reluctant to adopt the holding of the Tax Court in Dauwalter v. Commissioner, 9 T.C. 580, that "incident to such divorce" has reference only to the decree and not to divorce status, held that the only legal obligation to support imposed on the husband stemmed from the earlier agreement which had been incorporated in the decree, and not from the subsequent and revised one which had not been incorporated. In two earlier opinions in this circuit— Smith v. Commissioner, 2 Cir., 1948, 168 F.2d 446 and Daine v. Commissioner, 2 Cir., 1948, 168 F.2d 449, Clark, J. writing for the court held that the words "instrument incident to 'such divorce'" mean incident to the decree, and that a legal obligation imposed on the husband solely by agreement with his wife was not within the statute. The furthest point to which a court has gone in holding a post-divorce revision agreement incident to the divorce is found in Smith v. Commissioner, 1 Cir., 1951, 192 F.2d 841; there, the revised agreement, cancelling an earlier one which had been incorporated in the decree of divorce, was held to be within the statute. It was found that the origin or motive for the later agreement could be traced to no other obligation than that arising from the marital relation, and while the court found it unnecessary to further define the meaning of the phrase "incident to such divorce", it did approve of an interpretation broad enough to include the "continuing status of the legal obligation to support the divorced spouse." 192 F.2d at page 844 (See also, Judge L. Hand's statement in Commissioner of Internal Revenue v. Murray, supra, 174 F.2d at page 817: "As a new question we are not prepared to say that the phrase, 'a written instrument incident to such divorce or separation,' should be read as 'incident to such divorce or separation decree'"; and Mertens, Law of Federal Income Taxation, V. 1, 1952 Cum. Pocket Supp. Sec. 5.23, p. 122).

Both of these cases (second Smith case and Murray) are distinguishable in their facts from the instant one, for in both the revised, post-divorce agreement expressly cancelled and terminated the prior agreement with the result that the payments held to be within the statute under the subsequent agreements were in fact the only provision made for the support of the spouse. It should also be noted that while the court in the Murray case held the payments to the wife under the revised agreement taxable to the wife, it did so on the finding that these were for a lesser amount than those provided for in the earlier agreement which had been cancelled.

Another case relied on by plaintiff, Mahana v. United States, 1950, 88 F. Supp. 285, 115 Ct.Cl. 716, I read as merely pointing up the need for the existence of a legal obligation imposed by the marital relation. There the court held within the statute a revisionary agreement made nine years after the divorce, providing for payments additional to those received under an earlier agreement; this, on a finding that the subsequent agreement only construed the rights which flowed to the spouse under the first agreement which was incident to the divorce. The court wrote, 88 F.Supp. at page 290: "The plaintiff had no rights against her former husband in 1933 (the date of the second agreement) except

those that were given her by the 1923 agreement. The rights which she got under the 1933 agreement were, with mutually satisfactory additions and subtractions, those to which she was entitled under the 1923 agreement."

Finally, we have in this circuit Gale v. Commissioner, 2 Cir., 1951, 191 F.2d 79, where additional payments received by the wife under a subsequent agreement were found taxable to her, but only after the court granting the divorce, as a result of a dispute between the parties over the construction of the pre-divorce agreement modified its decree to increase the alimony payable to the wife. This is not the situation in the instant suit.

Although it seems from the cases cited that the trend of decision is headed to a holding that "any revision will satisfy the 'legal obligation' requirement if the original agreement was executed while a legal obligation to support existed," Yale Law Journal, supra, pp. 1201–02, plaintiff has not sustained his contention that the property agreement of 1930 falls within this category.

The agreement of 1930 was completely separate and apart from the trust agreement of 1924, which alone was incident to the divorce. Its provisions had no effect whatsoever on the support payments provided for Mrs. Heath under the trust agreement, for that agreement was still in "full force and effect" and the $11,000 payable under the 1930 agreement was to be in addition to the income she received under the first agreement. Moreover, I have found that the payment of $11,000 was not made by plaintiff to carry out a legal obligation imposed upon him by his prior marital relation, but was the consideration for the release by Mrs. Heath of custody of the children. Nor, can I accept plaintiff's rather strained argument that this agreement by taking the place of the agreement of 1928 falls within the rationale of the Mahana case, supra, as a compromise of the custody provisions incorporated in the decree and modified by the parties by the agreement of 1928.

I need not consider whether under New York law plaintiff was in 1930 under any legal obligation to support his former wife, for Sec. 22(k) was designed to "produce uniformity in tax treatment * * * regardless of variance in state laws concerning the existence and continuance of an obligation to pay alimony." H.Rep. No. 2333, 77th Cong., 1st Sess.

I conclude that under either interpretation of the phrase "instrument incident to such divorce" the property agreement of 1930 does not come within the provisions of that section.

In view of my finding that the agreement of 1924 continued in effect and that the $11,000 payment was in addition to the income payable under that agreement, it is unnecessary to consider plaintiff's contention that the $11,000 payment qualifies as a lesser payment under the holding of the Murray case.

Although there were received in evidence affidavits of experts on the French law (P.'s Exs. 3, 4, 5), asserting the continuing jurisdiction of the French court over the support provisions made by the parties, I find it also unnecessary to consider them. Neither of the parties to the divorce availed himself of this reserved jurisdiction to petition the French court to modify the trust agreement of 1924. Whether the 1930 agreement was incident to the divorce is a question for this court's determination, consequently, the reserved jurisdiction of that court is immaterial.

The complaint is dismissed; the clerk is directed to enter judgment for defendant with costs.