**GRANT**

**v.**

**COMMISSIONER OF INTERNAL REVENUE.**

No. 42, Docket 22692.

United States Court of Appeals Second Circuit.

Argued Nov. 10, 1953.

Decided Dec. 30, 1953.

Swan, Circuit Judge, dissented.

432

John P. Allison, New York City, for petitioner.

H. Brian Holland, Ellis N. Slack, Robert N. Anderson and William L. Norton, Jr., Washington, D. C., for respondent.

Before SWAN, FRANK and MEDINA, Circuit Judges.

FRANK, Circuit Judge.

1. As the taxpayer wisely conceded on oral argument in this court, the 1929 agreement, made some 35 days before the divorce suit began, was "incident to" the divorce.[1]

2. If, without more, Ross, in May 1946, had paid Jane Grant the $10,-720 of arrears due under the 1929 agreement, it would have been indisputable that that sum constituted "periodic payments," taxable to her under the statute, notwithstanding they were paid in a lump. For delay in making several periodic payments does not change their original character.[2] We think the same

1. See Izrastzoff v. Commissioner of Internal Revenue, 2 Cir., 193 F.2d 625; Lerner v. Commissioner of Internal Revenue, 2 Cir., 195 F.2d 296.

2. Estate of Narischkine v. Commissioner of Internal Revenue, 14 T.C. 1128, affirmed 2 Cir., 189 F.2d 257.

is true here, since the 1946 agreement plainly describes the $10,720 as "the amount due and owing to her up to January 1, 1946 pursuant to the separation settlement agreement dated April 1, 1929." As the government contends, by its very terms the agreement of May, 1946 did not undertake to supersede the 1929 agreement previous to January 1, 1946, by which time the $10,720 had become Ross' fixed obligation.

The taxpayer, however, stresses the fact that, pursuant to the 1946 agreement, Ross paid her "the $10,720 as consideration for the full discharge of Ross' future, as well as past obligations to supplement" the "dividends on the stock," and "for a reduction in Ross' insurance policy." The $10,720, she argues, was therefore a lump sum, and the Tax Court erroneously "ignored the unitary nature" of the May 1946 agreement which "gave Ross far more than a mere receipt for what he owed up to that point." Although the stipulation of facts states that she received nothing except the $10,-720, and although in her briefs in this court she makes no mention of the item of $1,500 for her attorney's fees, we shall assume, arguendo, that Ross paid that item. On that assumption, taxpayer's argument may be augmented thus: By the 1946 agreement, she received $12,-220—*i.e.*, $10,720 plus $1500—for her release of (a) Ross' obligation to pay the $10,720 of arrears of alimony and (b) other important obligations due from Ross under the 1929 agreement. Even so, we think the Tax Court's decision correct.

Corbin, great master of the "law of contracts," deems the distinctions between "entirety" and "divisibility" of a single contract largely mirage-like, creative of "confusion and obscurity," and expressing "no clear and usable concept." He demonstrates that, in judicial opinions which voice the distinction, actually "the solutions vary with the purposes in view and with the character of the problem to be solved"; [3] and he shows how in some instances courts held that separate suits may be brought for breaches of separate promises given in one contract for a single consideration.[4] Nevertheless we shall assume, arguendo, that the courts of New York, where the 1946 contract was made and was to be performed, would hold that that contract was wholly unitary for the purpose of determining the rights and obligations of the parties as between themselves.

But here we must apply a provision of the federal Revenue Code with due regard to the congressional purpose it embodies, *i. e.*, to lessen the tax burden of a divorced husband by allowing him to deduct from his gross income, in computing his taxable net income, periodic alimony payments. We have in mind Supreme Court decisions that dwell on the peculiar perspective of many tax laws, telling us that the legal significance (relevance) of facts from the angle of those laws is often not identical with their usual legal ("private law") significance. Thus the Supreme Court holds that the niceties of legal rules governing private rights and obligations in respect to trust estates or remainders must yield to the purpose of the revenue statutes.[5] As we have said: "Income tax 'law' is not a matter of pure reason. It is a composite of constitutional doctrine and interpretations of changing statutory provisions each having its history. In ascertaining the meaning of those provisions, we must be guided by the light of Supreme Court decisions. We are merely a reflector, serving as a judicial moon." [6] Nor is it merely our

3.  3 Corbin, Contracts (1951) §§ 694–696, 698.

4.  Ibid. § 698.

5.  See, e. g., Corliss v. Bowers, 281 U.S. 376, 379, 50 S.Ct. 336, 74 L.Ed. 916; Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 74 L.Ed. 991; Helvering v. Clifford, 309 U.S. 331, 335, 336, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Hallock, 309 U.S. 106, 118, 60 S.Ct. 444, 84 L.Ed. 604.

6.  Choate v. Commissioner of Internal Revenue, 2 Cir., 129 F.2d 684, 686.

moon-like function that induces us to include that, just as elsewhere the meaning of a fact—indeed what is a fact—often varies with the purpose in hand—*e. g.*, a hammer is not the same fact to a carpenter, a painter, a physicist and a murderer—so in the legal realm what is a fact often depends on the special legal context in which the question arises.[7] More particularly, in applying tax statutes, the Supreme Court frequently turns away from the interpretations of conduct under "local" or "private law," and remarks that it is "speaking with reference to taxation"[8] or dealing with an event "for tax purposes."[9] When, in tax cases, the Court says that, because "taxation * * * is eminently practical,"[10] it regards "substance" rather than "form," or looks through a "sham" or "disguise" or "masquerade" to the "realities,"[11] it is saying, in effect, that it treats as mere "form" or as a "sham" that which in a different legal setting represents "substance" or "reality."[12] For thinking in the domain of "tax law" is necessarily contextual. It operates in a specialized "universe of discourse." Any such specialized talk-world (or think-world) has its own restricted "attentional attitudes," and confers the accent of reality on some matters (and the accent of unreality upon others) whereas in another alternative talk-world (that of decedent's estates for example) some of the reals of the "tax-law" world become unreals, ghosts or phantoms.

Consequently, we think that the ordinary rules, relative to private rights and duties growing out of the facts of a particular contract, must give way to the paramount aim of the revenue statute before us here. See, e. g., Lucas v. Earl, 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed. 731, where the Court (per Holmes, J.), when applying a section of the Revenue Act, disregarded the legal consequences of a contract under state "law." Accordingly, in applying Section 22(k) to this case, we take the payment of the arrears of periodic sums due under the 1929 contract as the nub of the 1946 contract and whatever was done in carrying it out.[13]

Affirmed.

7. Nor is there a single perspective even in the area of federal taxation: Conduct is not uniformly interpreted as creating a gift under the gift-tax Act, the income-tax Act, and the estate-tax Act. See Commissioner of Internal Revenue v. Beck, 2 Cir., 129 F.2d 243, 246, where we suggested, "Perhaps to assuage the feelings and aid the understanding of affected taxpayers, Congress might use different symbols to describe the taxable conduct in the several statutes, calling it a 'gift' in the gift tax law, a 'gaft' in the income tax law, and a 'geft' in the estate tax law."

8. Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916.

9. See, e. g., Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 604, 68 S. Ct. 715, 722, 92 L.Ed. 898; Higgins v. Smith, 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406.

10. See, e. g., Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991.

11. See, e. g., Higgins v. Smith, 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406; Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; cf. Kocin v. United States, 2 Cir., 187 F.2d 707, 708.

12. Cf. Judge Learned Hand, dissenting, in Sage v. Commissioner of Internal Revenue, 2 Cir., 83 F.2d 221, 224, 225; Commissioner of Internal Revenue v. Sansone, 2 Cir., 60 F.2d 931, 933; Paul, Studies in Federal Taxation (1937) 88–91; Paul, Selected Studies in Federal Taxation, Second Series (1938) 200; Paul, 2 Federal Estate & Gift Taxation (1942) 1064.

13. As the government suggests, it was natural for taxpayer, in the May 1946 contract, because of her improved earning capacity and financial condition, to make concessions as to the future, but she did this only as to the period after January 1, 1946, at which time $10,720 was owing to her.

We are not to be understood as laying down a rigid rule governing all contracts in which a husband agrees to pay a sum, regardless of its amount, for (1) arrears of periodic payments and (2) other very substantial consideration.

MEDINA, Circuit Judge, concurs in the result.

SWAN, Circuit Judge (dissenting).

I agree that the 1929 separation agreement was "incident to" the divorce thereafter obtained. This is indicated by paragraph vi which provides that the payments shall continue during the wife's life "irrespective of any change in the status of either party." I agree also that the dividend-deficiency payments which the husband was obligated to make were "periodic payments" within section 22(k) of the Internal Revenue Code. I am unable to agree that the sum of $10,720 paid to her in 1946 was paid pursuant to the 1929 agreement. That agreement was superseded by the 1946 agreement as expressly therein stated, as follows:

> "1. This agreement is in lieu of and supersedes as of January 1, 1946 all other previous agreements between the parties, and Grant shall have no claim or claims of any kind upon Ross and Ross shall have no further obligations to Grant to make any payments or disbursements to or for her use or benefit except as herein expressly provided."

The obligations Ross undertook by executing the 1946 agreement were to maintain the insurance policy and pay the premiums thereon (paragraph 5), and to pay Grant $10,720 and her attorney $1,500 (paragraph 7). It is true the payments required by paragraph 7 were to be made "upon the execution of this instrument." It is true also that the $10,720 sum payable to Grant was described as "the amount due and owing to her up to January 1, 1946 pursuant to the separation agreement dated April 1, 1929." But neither the description of the sum nor the fact that it was payable contemporaneously with executing the agreement militates, in my opinion, against the view that the obligation which the payment satisfied was the obligation Ross assumed in the 1946 agreement. The later agreement was to supersede the earlier and to put an end

to Grant's claims under the earlier. "An existing claim can be instantly discharged by the substitution of a new executory agreement in its place." Corbin, Contracts, § 1293. Hence I think the payment was made pursuant to the later agreement.

This conclusion, however, is not itself dispositive of the case. It may well be, as the Commissioner's brief suggests as an alternative argument, that the 1946 agreement was itself "incident to" the divorce since it superseded one which was. See Mahana v. United States, 88 F.Supp. 285, 290, 115 Ct.Cl. 716, certiorari denied 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383; Smith v. Commissioner of Internal Revenue, 1 Cir., 192 F.2d 841, 842. Granting that the 1946 contract was incident to the divorce, the question then arises were the payments made pursuant to that agreement "periodic" payments. I do not think they were; they satisfied all Ross' obligations except his promise to pay insurance premiums. Cf. Frank J. Loverin v. Commissioner of Internal Revenue, 10 T.C. 406; Gale v. Commissioner of Internal Revenue, 2 Cir., 191 F.2d 79, 81.

I am unable to follow my brothers' conclusion that here the ordinary rules relative to private rights and duties growing out of a particular contract must give way to the paramount purpose of the tax statute to lessen the tax burden of a divorced husband. In my opinion that states the purpose of the statute too broadly. Section 22(k) and section 23(u) tax the recipient of alimony payments and give the payor the privilege of deduction provided the payments are "periodic"; otherwise not. For all we know the parties may have purposely drawn the 1946 contract so that the husband would have to pay the tax on the 1946 payment; he might well have been willing to do that in order to be relieved of future dividend-deficiency payments to the divorced wife and to obtain favorable modifications with respect to the $50,000 insurance policy. I think the decision of the Tax Court should be reversed.