## LERNER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 94, Docket 21957.

United States Court of Appeals
Second Circuit.

Argued Feb. 5, 1952.

Decided March 17, 1952.

Martin A. Roeder, New York City (I. Herman Sher, New York City, on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Robert N. Anderson, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before SWAN, Chief Judge, and L. HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case raises again the troublesome problem as to what is "a written instrument incident to" divorce, by virtue of which payments made pursuant to it become taxable as income to the divorced wife as payee and deductible from the gross income of the husband as payor. I.R.C. §§ 22(k), 23(u), 26 U.S.C.A. §§ 22(k), 23(u).[1] Here we are asked to decide whether or not a separation settlement agreement providing for periodic payments by petitioner to his estranged wife was "incident to" a divorce between the parties decreed one year later.

From the facts it appears that petitioner and his wife, Edith A. Lerner, were married in 1913 and separated by mutual consent in August, 1934. Following their separation, petitioner paid her from $25,000 to $30,000 a year for support until October 20, 1936, when they entered into a specific written agreement binding him to annual payments of $30,000. The agreement stated in its Eighth Article: "It is the intent of the parties hereto and of the essence of this agreement that the obligations of the party of the first part [husband] under this agreement shall continue during the natural life of the party of the second part [wife] and shall not in any wise or manner be affected by any decree of divorce that may at any time in the future be obtained by either party as against the other, or by any subsequent remarriage of either of the parties hereto or by the death of the party of the first part."

Both husband and wife testified before the Tax Court; but the evidence as to their contemporaneous attitude toward a divorce is conflicting and unclear, as we should expect, based as it is upon recollection of a state of mind of some fifteen years past.

At any rate a year later, on October 27, 1937, Edith instituted an action for divorce on grounds of adultery and for "such other and further relief as to the Court may seem just and proper" in the New York Supreme Court for Westchester County. The matter was referred to a referee "authorized and empowered to fix the amount of alimony herein," who held hearings in November. During these the following colloquy occurred between the referee and the husband:

"Q. I understand that while you have been separated from your wife there was a separation agreement? A. Yes, sir.

"Q. A written agreement? A. Yes, sir.

"Q. And that still exists? A. Yes.

"Q. You are paying her? A. Yes, sir.

"Q. Therefore, there will be no alimony fixed now. The separation agreement will survive the divorce decree? A. That's right.

"Q. Your wife wants that separation agreement to continue? A. Yes.

\* \* \* \* \* \*

"Q. The agreement survives the divorce? A. Yes.

"Referee: All right, I will recommend the interlocutory decree be granted and sign the decree."

The referee rendered his findings and conclusions on November 20 and the decree of absolute divorce, which did not specifically refer to alimony or to the separation agreement, was entered on December 2, 1937.

Following the passage of I.R.C. §§ 22(k), 23(u), in 1942, petitioner deducted the payments made under the agreement from his gross income of that year and from that of the years 1943 and 1944 as well. Respondent, however, determined that these deductions resulted in deficiencies in that the

---

1. I.R.C. § 22(k) provides for the inclusion in the gross income of the divorced wife "periodic payments * * * received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce." I.R.C. § 23(u) provides for a corresponding deduction by the husband in the amount of § 22(k) payments.

agreement under which the payments were made did not come within I.R.C. § 22(k) because it was not "incident to" the divorce. The Tax Court agreed primarily on the ground that there was no "anticipation of divorce by both parties at the time of the execution of the separation agreement." Joseph J. Lerner, 15 T.C. 379, 386.

But this court has recently recognized in a similar case that "There is no requirement in § 22(k) of positive proof that both parties jointly and positively anticipated legal divorce or separation at the moment they signed the agreement. * * * Legislative emphasis upon a mutually coexistent intent for divorce is not to be assumed in the absence of an expressed requirement, particularly in view of the well understood danger that an appearance of collusion between the parties might prevent divorce in many jurisdictions. Such legislative history as is available stresses only the manifest fairness of charge to the wife and deduction by the husband of payments not only for alimony, but also for separate maintenance provisions 'in the nature of or in lieu of alimony or an allowance for support.' House Ways and Means Committee, 77th Cong., 2d Sess., Rep. No. 2333, pp. 46, 71, 72." Izrastzoff v. C.I.R., 2 Cir., 193 F.2d 625, 627, 628. See also Treas.Regs. 111, § 29.22(k)–1, Example (3).

Even with this rationale it would still be possible, as we there intimated in citing this case when before the Tax Court, for the trier of facts to find that divorce was not contemplated at the time of the agreement and hence that the latter was not incident to the former. Such a critical examination of the facts appears to have been usual with the courts, although favoring the husband in actual result. Cox v. C.I.R., 3 Cir., 176 F.2d 226; C.I.R. v. Murray, 2 Cir., 174 F.2d 816; Mahana v. United States, 88 F. Supp. 285, 115 Ct.Cl. 716, certiorari denied 339 U.S. 978, 70 S.Ct. 1023, 94 L.Ed. 1383. And see also Tuckie G. Hesse, 7 T.C. 700; Robert Wood Johnson, 10 T.C. 647; George

T. Brady, 10 T.C. 1192; Jesse L. Fry, 13 T. C. 658.

 This development, however, has posed a dilemma for tax attorneys, notably in states where the divorce might be voided for collusion, Eolis, What to Think About in Terminating the Marital Relationship, N.Y.U. 8th Ann.Inst. on Fed.Tax. 1033, 1037, 1950; and it also has threatened to limit the indicated congressional policy of placing the tax burden of all general marriage settlement payments on the party entitled to their enjoyment. H.R.Rep. No. 2333, 77th Cong., 2d Sess., 71–72. See Charles Campbell, 15 T.C. 355, 359, 360. Further reflection therefore constrains us to the view that Congress could hardly have intended so confined a meaning. The term "written instrument incident to such divorce" was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred, and not to deny relief to the husband when merely legal formalities have not been rendered their full due. So where the payments obviously take the place of alimony and otherwise satisfy the stringent requirements of I.R.C. § 22(k), although not formally incorporated into the decree, they should not be denied effect under the statute merely because there is no evidence that divorce and settlement were not contemporaneously planned and carried out.[2] Compare Smith v. C.I.R., 1 Cir., 192 F.2d 841, which goes somewhat farther than we are here called upon and holds within the statutory ambit even a later and post-divorce revision of an earlier agreement.

 We hold, therefore, that the 1936 settlement here was "incident to" the later divorce. It is true that the intervening year is bare of any real proof—aside from petitioner's own recollection—that both parties intended specifically to close out their marital relations with the finality of an absolute divorce. But a requirement that evidence of this sort be adduced to satisfy the statutory formula can be founded only on the

2. With commendable frankness the attorney for the respondent informed us at the argument that while the government here supported the decision of the Tax Court, yet in a case pending in another circuit on review and in the interest of obtaining a decisive adjudication it was making (as we understand) the contention we are adopting here.

myth that a party's state of mind during periods of emotional stress attendant upon the break-up of a marriage is generally subject to objective proof. Rather we would rely on the fact that the settlement, designed expressly to survive any future decree, was in fact exploited by the court in establishing the final legal and economic relationship between the parties.

Thus here the petitioner and his wife provided in 1936 that the settlement was to continue in force whether or not in the future either one secured a divorce. When this possibility became an actuality a year later the referee, discussing the wife's future support, took the payments there provided for into consideration as they intended he should. Thus the court made actually "incident to" the divorce the agreement which the parties had provided in advance should become "incident to" it. The conjunction of the survival provision in the settlement agreement with the fact that the substance of the decree was geared to its continuing in force in lieu of prescribed alimony should be adequate to satisfy the statutory purpose. Whether either circumstance alone would have been sufficient we need not now decide.

Decision reversed for allowance of the deductions claimed.