## FEINBERG v. COMMISSIONER OF INTERNAL REVENUE.

No. 10598.

United States Court of Appeals Third Circuit.

Argued June 2, 1952.

Decided Aug. 13, 1952.

Albert L. Solodar, New York City (Max Wechsler, Philip J. Smith, New York City, on the brief), for petitioner.

Walter Akerman, Jr., Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Helen Goodner, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

The question presented is whether certain payments by a taxpayer to his Florida-divorced wife were made pursuant to a written instrument "incident to" a decree of divorce, so as to be deductible from his gross income under Section 23(u) of the Internal Revenue Code.[1]

---

1. 26 U.S.C.1946 ed. Sec. 23(u).

The deductibility of such payments depends upon whether they are includible in the wife's income under Section 22(k),[2] which provides:

"(k) Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * * * received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * * This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix * * * as a sum which is payable for the support of minor children of such husband. * * *"

The material facts have been stipulated. George J. Feinberg ("taxpayer") and Anna Feinberg were married in 1918 in New York, and were continuously domiciled in that state until 1939. Two children were born of this marriage: Bernice, born in 1920; and Arthur, born in 1922.

On February 10, 1940, after marital difficulties, taxpayer and his wife entered into a separation agreement which provided in part as follows:

"1. * * * it shall be lawful for each of said parties, at all times, to live and continue to live separate and apart from the other * * * as if such parties were sole and unmarried.

*    *    *    *    *    *

"6. * * * the first party (taxpayer), while the said parties hereto shall both remain alive and so long as the second party shall fully keep and perform the covenants and conditions to be kept and performed by her under this agreement, shall pay to the second party the sum of Three Thousand Nine Hundred ($3900) Dollars per annum in equal weekly installments of Seventy-five ($75) Dollars each, commencing with the date hereof.

*    *    *    *    *    *

"14. The first party further agrees that in the event the children of the marriage * * * marry and become self-supporting, * * * the alimony to be paid to the second party * * * shall be reduced to Fifty ($50) Dollars per week; * * * in other words, as and when each of the children of the parties hereto marries and becomes self-supporting, the alimony to be paid to the second party shall be reduced Twelve and 50/100 ($12.50) Dollars per week per child.

*    *    *    *    *    *

"16. * * * in case either party hereto should at any future date and in any jurisdiction, institute suit against the other for a Separation or Divorce, then, and in such event, such party bringing the action shall be obligated to have incorporated in the final Decree in said action the provisions of this agreement.

"17. * * * if, at any future time, the second party shall remarry then, and in such event, all the provisions for maintenance of the second party herein contained shall immediately cease and terminate."

Thereafter, on or about March 21, 1940, taxpayer instituted an action for divorce against his wife in the Circuit Court for the 11th Judicial District of Dade County, Florida. Anna Feinberg did not appear in that action, nor did counsel appear for her; service was by publication only. On May 27, 1940, taxpayer was granted a decree of divorce a vinculo matrimonii by the Florida court. In June, 1940, he married one Frances Finn, in New Jersey, where they now live.

In the year 1941, taxpayer's first wife, Anna Feinberg, instituted an action in the Supreme Court of New York, praying for a declaratory judgment that the Florida divorce decree was null and void and that she was still taxpayer's true and lawful

---

2. 26 U.S.C.1946 ed. Sec. 22(k).

wife. She also alleged that she had been induced to enter into the separation agreement as a result of taxpayer's fraudulent understatement of his earnings and assets, and requested the court to reform the agreement to conform to taxpayer's true financial condition. This action was settled by stipulation of the parties in June, 1942, and pursuant thereto the New York court entered a consent judgment, on November 17, 1942, declaring that Anna Feinberg was taxpayer's true and lawful wife and reforming the separation agreement in accordance with the stipulation of settlement.[3]

Pursuant to the original agreement of February 10, 1940, taxpayer made payments to Anna Feinberg in each of the taxable years here involved (1942 and 1943) at the rate of $3900 per annum ($75 per week),[4] and deducted the entire amounts of these payments from his gross income for those years. The deductions were disallowed by the Commissioner of Internal Revenue, and taxpayer petitioned the Tax Court for a redetermination of the resulting deficiency in taxes.[5] The Tax Court sustained the Commissioner on the ground that taxpayer had not met the burden of proving that the payments were made pursuant to a written instrument "incident to" a decree of divorce or separate maintenance, as required by Sections 23(u) and 22(k) of the Code.[6]

In doing so it stated that "While it appears that petitioner (taxpayer) and his wife (Anna Feinberg) had, prior to the execution of the separation agreement considered a possibility that petitioner (taxpayer) would seek a divorce * * *" such a possibility was insufficient under the applicable law. In support of the latter statement the Tax Court cited its prior

ruling in Joseph J. Lerner, 15 T.C. 379, 386 that " * * * the possibility of divorce at some unspecified time is a far different thing from the anticipation of divorce by both parties at the time of the execution of the separation agreement which the statute requires in order that the payments under the separation agreement be considered 'incident' thereto."

With respect to the Tax Court's reliance on Joseph J. Lerner, supra, it may be noted that its decision there was reversed by the United States Court of Appeals for the Second Circuit in Lerner v. Commissioner, 1952, 195 F.2d 296, 298. In reversing, the Court specifically held that there was no requirement in Section 22(k) that " * * * both parties jointly and positively anticipated legal divorce or separation at the moment they signed the agreement (for separate maintenance)", and cited its prior ruling to the same effect in Izrastzoff v. Commissioner, 1952, 193 F.2d 625, 627, 628.

We are in complete accord with the view expressed by the United States Court of Appeals for the Second Circuit in the Lerner and Izrastzoff cases. It is appropriate to note that counsel for the Commissioner of Internal Revenue has informed us that the Commissioner expressed agreement with our view and that of the Second Circuit in Miller v. Commissioner, 16 T.C. 1010, now pending on appeal in the United States Court of Appeals for the Ninth Circuit. In the latter case the Commissioner has taken the position that the word "incident" as used in Section 22(k) should be given a broader construction than was given it by the Tax Court in the instant case and that there is no requirement that there be anticipation or contemplation of divorce at the time of the separation agreement. The Tax Court

---

3. In a later action instituted by Anna Feinberg to compel taxpayer to comply with the reformed agreement, taxpayer counterclaimed for an adjudication that Anna was not his true and lawful wife. This counterclaim was denied. Sup., 1943, 41 N.Y.S.2d 869.

4. The reformed agreement did not change the basic weekly rate of $75, but merely made provision for additional lump

sum payments annually, based upon a percentage of taxpayer's income.

5. The deficiency was assessed on the basis of taxpayer's 1943 return only; but both taxable years were involved by reason of the Current Tax Payment Act of 1943, § 6, 57 Stat. 126.

6. The opinion of the Tax Court is reported in 16 T.C. 1485.

itself appears to have taken the same position in Robert Wood Johnson, 10 T.C. 647; George T. Brady, 10 T.C. 1192 and Jessie L. Fry, 13 T.C. 658.

It is clear that the agreement here involved was "incident to" the Florida divorce. It was entered into only six weeks before the divorce action was begun, and less than four months before the final decree was handed down. Further, the provision for weekly payments to the wife was obviously intended to serve as an alimony provision, as indicated by the other sections providing that (1) the terms of the agreement were to be incorporated in any decree of divorce or legal separation which might later be obtained by either party; and (2) all payments for the support of the wife were to cease in the event of her remarriage.[7] In short, the agreement was "part of the package of the divorce" which was obtained shortly thereafter. Cox v. Commissioner, 3 Cir., 1949, 176 F.2d 226, 229.

The Commissioner contends that the deductions should be disallowed regardless of the incidence of the separation agreement to the Florida decree, since the parties were subsequently declared to be legally married by the Supreme Court of New York. We cannot subscribe to this contention. The mere fact that the marital domicile of the parties did not recognize the Florida divorce does not render it a nullity for Federal income tax purposes.[8] This was the view set forth in General Counsel Memorandum 25250, 1947–2 Cum. Bull. 32, which involved the deductibility of payments by a husband under an agreement incident to a Mexican divorce.

As in the instant case, the decree was not recognized by the courts of the parties' domicile; and, as in the instant case, the husband had remarried in reliance upon the foreign decree. The Memorandum states that "There is no doubt that many persons affected by Mexican divorces have acted in good faith in relying on such divorces * * *. *To allow deductions * * * in such cases seems to be within the general intent of Congress * * *.* Even though a husband and wife might execute a separation agreement as an income-splitting device, it is doubtful that a husband and wife would go through the form of a Mexican divorce for such purpose." (Emphasis supplied.)

There remains to be determined the question as to whether the entire amounts of the payments were properly deducted.[9] The Tax Court found that of the weekly payments of $75, $12.50 was allocated for the support of each of taxpayer's two children. Section 22(k) provides that it does not apply to any periodic payment fixed "as a sum which is payable for the support of minor children of (the) husband." It is clear from the record that one of the taxpayer's children was a minor during at least a part of the period under consideration. Since the payments allocable to him after his twenty-first birthday would be deductible and those made before age twenty-one would not, it will be necessary for the Tax Court to determine the exact date of his birth. Robert Wood Johnson, supra.

For the reasons stated the decision of the Tax Court will be reversed and the cause remanded for proceedings consistent with this opinion.

---

7. Paragraph 14 of the agreement even refers to the payments as "alimony". It is immaterial that the terms of the agreement were not in fact incorporated into the Florida decree. Lerner v. Commissioner, 2 Cir., 195 F.2d at page 298.

8. Cf. Daine v. Commissioner, 2d Cir., 1948, 168 F.2d 449, 4 A.L.R.2d 248;

Friedmann v. Commissioner, 7 Cir., 1944, 145 F.2d 594.

9. In view of our disposition of the case it has not been necessary to pass upon the taxpayer's contention that the agreement was incident to the decree of the Supreme Court of New York.