## COMMISSIONER OF INTERNAL REVENUE v. MILLER.

No. 13145.

United States Court of Appeals, Ninth Circuit.

Oct. 28, 1952.

598

Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Carlton Fox and Harry Baum, Sp. Assts. to Atty. Gen., for petitioner.

George Bouchard, Los Angeles, Cal., for respondent.

Before HEALY and POPE, Circuit Judges, and HARRISON, District Judge.

HEALY, Circuit Judge.

This proceeding for review involves the construction of § 22(k) of the Internal Revenue Code, 26 U.S.C.A. § 22(k).[1] The Commissioner determined income tax deficiencies for the years 1945 and 1946 against the taxpayer, who had been divorced from her husband in 1937. She had received periodic payments from the former husband in the taxable years in discharge of an obligation incurred by the husband under a written agreement entered into between the two shortly prior to the

divorce. The Tax Court on petition for redetermination disagreed with the Commissioner, and the latter has brought the case here. The question is whether the agreement was a written instrument "incident to" the divorce within the intendment of the section.

The facts as found by the Tax Court were these: In 1921 the taxpayer married Jared H. Miller, who was 20 years her senior, and lived with him for about 15 years. They resided at Fontana, California. In March 1936 the taxpayer learned that Miller had been guilty of infidelity. Miller admitted the conduct and at first the two agreed to try to continue living together and forget the other woman. Miller had inherited from an earlier wife an undivided interest in some mining property in Michigan. He left Fontana in July of 1936 for a visit to these properties, after which he planned to return to Fontana in September. However, late in September he wrote the taxpayer, informing her that he would not return to her and advising her to seek the advice of a lawyer in order to obtain a property settlement. Neither mentioned divorce to the other. The taxpayer wrote Miller in an effort to persuade him to return, but he did not reply, and thereafter the two communicated with each other only through attorneys.

In October 1936 the taxpayer sought the advice of an attorney, telling him that she did not want a divorce but only a property settlement. In March 1937 her attorney and the attorney for Miller had agreed upon all the terms of the settlement. Late in April of 1937 the taxpayer decided to seek a divorce, and her attorney then informed the attorney representing Miller of her change of mind, and the lawyer in turn transmitted the news to Miller. All the terms of the property settlement had been agreed upon and the written instrument of settlement, with attached schedules of the

1. Section 22(k) relates to the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance. So far as here material it provides that "periodic payments * * * received subsequent to such decree in discharge of, * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, * * *."

property which each was to receive, had been drawn up by the latter part of May 1937, but the attorneys for the two spouses learned that Miller intended coming to Los Angeles in the near future, and decided to have the agreement signed when he got there. The agreement recites that it was entered into on June 15, 1937, and it was actually signed on that day.

Among other things, the agreement provided that Miller was to pay the taxpayer $6,300 a year as long as she lived, in quarterly installments, provision being made for the payment of that amount in such installments by his estate if he predeceased her. A paragraph of the agreement read thus: "This agreement shall not alter the relations of the parties hereto except with regard to their property rights; provided, however, that in the event that either party hereto shall obtain a divorce from the other, this agreement may be submitted to the court in which said divorce is obtained for approval." The agreement made no provision, other than as above quoted, referring to a divorce, and no suggestion was ever made to the taxpayer, or her attorney, that the property settlement agreement was contingent in any way upon her obtaining a divorce. There was no understanding between the taxpayer and her husband at the time they entered into the property settlement agreement that it was contingent upon her obtaining a divorce.

The taxpayer, on advice of her counsel, filed a complaint for divorce in a California court on June 23, 1937. Miller was served with summons but did not contest the action, and an interlocutory divorce decree was entered by default on August 24, 1937. The decree recited that the property agreement of June 15, 1937, had been filed with the court and was "approved." A final judgment of divorce was entered on August 25, 1938, on a printed form on which only names and dates had been typed. The words printed on the form included the following: "That wherein said interlocutory decree relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties declared therein to be entitled thereto."

On April 19, 1938, the taxpayer and Miller entered into a supplemental agreement wherein the residence property at Fontana, in which taxpayer had been given a life estate by the original agreement, was conveyed to her absolutely, and certain other personal property was surrendered to her by Miller. Otherwise the terms of the original agreement were to remain in full force and effect. The supplemental agreement was not shown to the court in the divorce proceeding.

In her returns for 1945 and 1946 (the tax years in question) the taxpayer reported as her only income the annual payments of $6,300 received from Miller under the agreement of June 15, 1937, but reported no tax due thereon, claiming that this amount was not taxable to her under § 22(k).

The Commissioner ruled that the amounts were taxable to her under that section and determined deficiencies accordingly. The Tax Court held that the language used in § 22(k) requires that a written instrument, to be "incident to" a divorce, "must be part of an integral plan of the two spouses which included the obtaining of a divorce." It added that the property agreement in this case was not a part of an integral plan which included the obtaining of a divorce— that it was "not a part of the package of the divorce which was later obtained." Miller v. C. I. R., 16 T.C. 1010.

Section 22(k) was interpolated into the revenue laws in 1942. The apparent thought of Congress in enacting it was that the wife should, in fairness, be charged with and the husband allowed to deduct, for income tax purposes, the payments of the latter for alimony and for separate maintenance or support in the nature of or in lieu of alimony.[2] The restricted interpretation given the statutory phrase by the Tax Court would tend, we believe, to defeat in many instances the legislative purpose. Here, as early as April 1937 the taxpayer had decided to obtain a divorce from her estranged husband

---

2. House Ways and Means Committee, 77th Cong., 2d Sess., Rep.No.2333, pp. 46, 71, 72.

and her intention had at that time been communicated to the husband. The instrument in question was not formally drawn up until a month later and was not actually executed by the parties themselves until June 15, 1937. Eight days later the taxpayer began the divorce action, a step which the husband did not contest. The instrument indicated unmistakably that it was to survive a possible divorce, and provided that it might be submitted for approval to the court in which the divorce was obtained. That procedure was followed and the instrument approved. To require, in addition to all this, proof that the parties mutually planned the divorce and that the instrument was an integral part of their plan, would, we think, be to import something into the statute that Congress did not require. We think that the instrument became "incident to" the divorce in the sense of the statute at least when, in conformity with its terms, it was filed with and approved by the court granting the divorce.

This appraisal of the statute is reinforced by very recent decisions in two of the Circuits. One of the cases relied on by the Tax Court in support of its ruling here. was the Lerner case, 15 T.C. 379. That holding has since been reversed by the Second Circuit. Lerner v. Commissioner, 195 F.2d 296, 298. In line with one of its earlier decisions, the court thought that " 'Legislative emphasis upon a mutually coexistent intent for divorce is not to be assumed in the absence of an expressed requirement, particularly in view of the well understood danger that an appearance of collusion between the parties might prevent divorce in many jurisdictions.' " There the suit for divorce was not begun until a year after the making of the agreement. The divorce court took into consideration the provisions of the prior agreement, including its provision that it was to continue whether or not a divorce was secured. It was held that the divorce court thus "made actually 'incident to' the divorce the agreement which the parties had provided in advance should become 'incident to' it."

In the still more recent case of Feinberg v. Commissioner, 198 F.2d 260, the Third Circuit Court, in reversing the Tax Court in a cognate case, expressed itself as being in complete accord with the view expressed in Lerner v. Commissioner.

The judgment of the Tax Court is reversed.