**NEWTON  v.  PEDRICK.**
No. 161, Docket 22928.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1954.

Decided April 28, 1954.

———•———

Wilkie, Owen, Farr, Gallagher & Walton, New York City (Thomas N. Tarleau,

Counsel, and William Fitz Gibbon and Sandow Holman, New York City, on the brief), for plaintiff-appellant.

J. Edward Lumbard, U. S. Atty., for the Southern Dist. of N. Y., New York City (Milton E. Lacina, Asst. U. S. Atty., Mahopac, N. Y., of counsel), for defendant-appellee.

Before CLARK. MEDINA and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

The basic point on this appeal presents an interesting question under Sections 22(k) and 23(u) of the Internal Revenue Code, 26 U.S.C. §§ 22(k) and 23 (u) taxing to a divorced or legally separated wife under certain circumstances support payments received from her ex-husband, and permitting the husband to deduct such payments from his gross income. The relevant portions of these Sections are printed in the margin.[1]

The question is: under these Sections of the tax laws may a divorced husband deduct support payments made to his ex-wife under an agreement entered into some years after a decree of divorce, when such payments are *in addition* to amounts already payable under an existing pre-decree support agreement which was concededly "incident to such divorce"? A subordinate point in the case is whether the answer to this question is affected by a finding that the payments made under the post-divorce agreement were undertaken by the husband in consideration of the wife's relinquishing to him the sole custody of the two minor children of the marriage.

Putting aside for the moment the subordinate point, this is a question which has not yet been reached by this Court in a series of cases under these Sections of the Internal Revenue Code. Smith v. Commissioner, 2 Cir., 1948, 168 F.2d 446; Daine v. Commissioner, 2 Cir., 1948, 168 F.2d 449, 4 A.L.R.2d 248; Commissioner v. Murray, 2 Cir., 1949, 174 F.2d 816; Gale v. Commissioner, 2 Cir.,1951, 191 F.2d 79; Izrastzoff v. Commissioner, 2 Cir., 1952, 193 F.2d 625; Lerner v. Commissioner, 2 Cir., 1952, 195 F.2d 296; Grant v. Commissioner, 2 Cir., 1953, 209 F.2d 430.

In the present case the District Court held that an $11,000 annual support payment under a post-divorce agreement, which was in addition to annual amounts already payable to the wife under an existing pre-divorce agreement, was not deductible by the husband in his 1944 Federal income tax return. Newton v. Pedrick, D.C.S.D.N.Y., 115 F.Supp. 368, Judge Ryan.

The material facts, all of which were stipulated, are as follows: Maurice Newton and Alice L. Newton (now Alice L. Heath) were married in August 1917. There were two children of the marriage. On July 23, 1924, in contemplation of a divorce, the Newtons entered into a Trust Agreement providing for the support of Mrs. Newton and their two minor children, under which it was planned that Mrs. Newton should receive $24,000 an-

1. 26 U.S.C. § 22(k): "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * * * received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *"

26 U.S.C. § 23: "In computing net income there shall be allowed as deductions: * * * (u) In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. * * *"

nually until her death or remarriage, and upon remarriage $14,000 for herself and $5,000 for each child annually. The Newtons were divorced in France on July 28, 1924, and the validity of that divorce is in nowise questioned here. The French decree awarded sole custody of the children to Mrs. Newton; it made no provision for alimony, nor did it contain any reference to the Trust Agreement.

On May 18, 1928, Mr. Newton and his former wife, who on August 25, 1926 had become Mrs. D. Collamore Heath, made a new agreement, called a "Property Agreement." At the same time they also entered into a Custody Agreement. The Custody Agreement was not in evidence below, but as appears elsewhere in the record it provided that custody of the children should be divided between Mr. Newton and Mrs. Heath, and that Mr. Newton should be the guardian of the property of the children and entitled to receive the income theretofore payable to the mother on their behalf under the Trust Agreement of 1924. In the Property Agreement Mr. Newton undertook to pay his former wife $6,000 annually for life on top of the amount she was entitled to receive under the 1924 Trust Agreement (which remained in force), conditioned on her faithful performance of the Custody Agreement. He further agreed to pay Mrs. Heath, during the minority of the children, $2,500 annually for their maintenance and support in the period she was entitled to their custody, and a further $2,500 each year the children remained during the summer months within the United States at stipulated localities. The Property Agreement was not to become effective until the Custody Agreement was approved by the Surrogate's Court of New York County.

Finally, on September 22, 1930, Mr. Newton and Mrs. Heath made a third agreement, also designated a "Property Agreement," and at the same time entered into a new Custody Agreement. Although this Custody Agreement was not before the District Court, it other-wise appears from the record that its effect was to lodge sole custody of the children in Mr. Newton, and to continue him as guardian of their property. The Property Agreement was not to become effective until the contemporaneous Custody Agreement had been approved by the Surrogate's Court of New York County. While the Surrogate's Court approval of the Custody Agreement is not fully shown by the record, we think that enough was shown to justify the District Court in proceeding on the premise that such approval had been obtained and that the Property Agreement became effective. The new Property Agreement cancelled the 1928 Property Agreement, but left the 1924 Trust Agreement undisturbed. Under the new Property Agreement, Mr. Newton was required to pay his wife $11,000 a year in addition to the amounts receivable by her under the Trust Agreement of 1924, such payments being terminable at his option in the event of Mrs. Heath's applying to any Court for a modification of the new Custody Agreement.

In holding that the $11,000 payments under the 1930 Property Agreement were not within the statute, the District Court reasoned thus: The 1924 Trust Agreement, made prior to and in contemplation of the divorce, was "incident to such divorce" and therefore came under Section 22(k). However, the 1930 Property Agreement, which followed some 6 years after the divorce decree, was not "incident to such divorce" because (a) the 1930 Agreement "was completely separate and apart" from the 1924 Trust Agreement which, as the 1930 Agreement expressly recognized, continued in "full force and effect"; the payments provided for by the 1930 Agreement were "in addition" to those called for by the 1924 Agreement; and therefore the 1930 Agreement could not be considered as amending the 1924 Agreement; and (b) the payments undertaken by Mr. Newton in the 1930 Agreement were not "to carry out a legal obligation imposed upon him by his prior marital relation, but [were] the consid-

eration for the release by Mrs. Heath of the custody of the children." The District Court therefore found it unnecessary to decide whether support payments made under a post-decree agreement which amends the support obligations of a pre-decree agreement fall within the statute.

We think that the District Court's interpretation of the factual situation was too narrow and resulted in disregarding the substance of what took place. In our view the 1928 and 1930 Property Agreements, together with their respective Custody Agreements, cannot be regarded as anything but successive reshufflings of the total original divorce arrangements, effected by the 1924 Property Agreement and the divorce decree awarding custody of the children to the mother. We perceive no real difference between providing that the $11,000 annual payments to the wife under the 1930 Property Agreement were to be in addition to those to which she was entitled under the Agreement of 1924, and providing that the Agreement of 1924 was to be amended so as to increase the annual payments thereunder by $11,000. In both cases the purpose and effect of the new agreement would be to make a change in the parting arrangements between the spouses.

Nor do we think that the situation is affected by the District Court's finding—which we accept—that the consideration for the increased support payments under the 1930 Agreement was the relinquishment by the mother of custody of the children to their father. The natural inference from the original support arrangements was that the wife was to be given custody of the children under the divorce decree, as indeed she was. The 1924 Property Agreement and the custody provisions of the divorce decree together constituted a set of obligations incurred by and imposed upon plaintiff-appellant because of "the marital or family relationship." The subsequent Property and Custody Agreements of 1928 and 1930 reflected alterations in the original pattern of the same set of obli-

gations. The fact that increased support for the wife may have given the husband an opportunity to adjust the custody arrangement hardly proves that the motive for the 1930 Property Agreement was other than a "marital" or "family" one.

We recognize that Section 22(k) does not apply to "that part of any such periodic payment which the terms of the * * * written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. * * *" But here the moneys payable to Mrs. Heath under the 1930 Property Agreement were entirely for her benefit, with no part thereof being allocable to the support of the minor children.

We must, therefore, decide whether Sections 22(k) and 23(u) tax to the wife, and permit deduction by the husband, of support payments made under a post-decree agreement which amends a pre-decree agreement, neither agreement having been incorporated in the decree of divorce. This means, we think, that we must choose between an interpretation of Section 22(k) which reads the clause "a written instrument incident to such divorce or separation" as meaning "incident" to a *decree* of divorce or separation rather than to the *status* of divorce or separation.

The Courts have had difficulty with the proper interpretation of this clause ever since the enactment of the statute, and, perhaps understandably, have shown a reluctance to meet the question head on whenever another way out has been found. For example, in Smith v. Commissioner, 1 Cir., 1951, 192 F.2d 841, the case which on the facts is closest to the one before us, the Court held includible in the wife's return support payments under a 1944 agreement, entered into 6 years after a divorce, on the ground that the agreement, being a revision of a 1937 agreement which was "incident" to the divorce of the parties in 1938, was itself also incident to the decree of divorce; therefore, the Court found it

unnecessary to decide whether the phrase "incident to such divorce" meant incident to the *decree* of divorce or to the *status* of divorce. And in the Murray and Grant cases, supra, in this Circuit payments under post-decree agreements were held includible in the wife's income by Judge Learned Hand and Judge Frank, respectively, in the first case to the extent they did not exceed the amount payable under the original pre-decree agreement, and in the second case on the ground that the sole payment called for represented no more than the aggregate of arrearages owing under the pre-decree agreement.

■ We think, as foreshadowed by Judge Clark's opinion in Lerner v. Commissioner, supra [and see Murray v. Commissioner, supra; Feinberg v. C. I. R., 3 Cir., 1952, 198 F.2d 260; C. I. R. v. Miller, 9 Cir., 1952, 199 F.2d 597; and 61 Yale L.J. 1198], that the phrase "incident to such divorce" in Section 22(k) should be read as referring to the *status* rather than merely the *decree* of divorce or separation, if the purposes of the statute, already discussed in some of our prior decisions (Gale v. Commissioner and Lerner v. Commissioner, supra), are to be fully effectuated. "The term 'written instrument incident to such divorce' was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred * * *." Clark, C. J., in Lerner v. Commissioner, 195 F.2d at page 298.

■ This does not mean that a written agreement fixing support payments entered into *for the first time* after a decree of divorce or separation would necessarily fall within the statute, for Section 22(k) also requires that deductible payments must be in discharge of a legal obligation incurred "because of the marital or family relationship". Legislative history indicates that the legal obligation to which the statute refers must be in recognition of the general obligation to support, which, it may be argued, in the contemplation of the statute ceases upon dissolution of the marriage status. See Sen.Rep.No.1631, 77th Cong., 2d Sess. 84 (1942); Cox v. Commissioner, 3 Cir., 1949, 176 F.2d 226; Tr.Reg. 29.22(k)–1.

There is nothing in the statute or its legislative background which suggests that it was intended that the equitable distribution of the tax burdens resulting from the adjustment of marital or family financial obligations in connection with a dissolution of the marriage relationship, which the statute aimed to achieve, should be limited to those arrangements effected at the time of a decree of divorce or separation, without regard to their possible future rearrangement in consequence of later and perhaps unforeseen vicissitudes.

■ The statute covers both obligations "imposed" by a decree of divorce or separation and those "incurred" under an agreement incident to a divorce or separation and entered into while the marriage status, and therefore the obligation to support, still existed. It is no longer open to doubt that such an agreement is within the statute even though not incorporated in the decree. Izrastzoff v. Commissioner, Lerner v. Commissioner, supra. And we have held that an agreement which has been incorporated in a decree is subject to modification by a later court order. Gale v. Commissioner, supra. Smith v. Commissioner, 1 Cir., supra, has held that an initial "incorporated" agreement may be modified by a subsequent "unincorporated" agreement. All this being so, we see no sound reason why an "unincorporated" agreement which is incident to a divorce, and which otherwise meets the requirements of the statute, cannot be modified by a subsequent "unincorporated" agreement.

■ We hold no more than that where a legal obligation to support survives the dissolution of the marital relationship—whether because of imposition in the divorce decree itself, or because of a pre-decree agreement not incorporated in the decree, Lerner v. Commissioner,

supra—a subsequent adjustment of that obligation by a court order or by later agreement, as the case may be, is "incident to such divorce" within the purview of the statute.

Judgment reversed.