ALICE L. HEATH, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 23460. Filed May 22, 1958.

*Watson Washburn, Esq.*, for the petitioner.
*Paul J. Henry, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income
tax for the calendar years and in the amounts as follows:

| Year | Deficiency |
|------|-----------|
| 1943 | $4,509.16 |
| 1944 | 4,320.32 |
| 1945 | 4,351.50 |

Most of the amount of the deficiency for the year 1943, and all of the
deficiencies for the years 1944 and 1945 result from the respondent's
addition to reported income of the amount of $11,000 for each year,
designated in the notice of deficiency as alimony income. Such in-
clusion is assigned as error for each year. A minor adjustment made
to income for the year 1943 is now .conceded by the respondent to
have been erroneous.

#### FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by
this reference.

The petitioner is an individual residing at Newton, Connecticut.
Her individual returns for the years 1943, 1944, and 1945, on a
calendar year basis and cash method of accounting, were timely filed
with the collector of internal revenue for the district of Connecticut.

The petitioner and Maurice Newton, sometimes herein called
Newton, were married in August 1917. On July 23, 1924, the peti-
tioner and Newton, then being domiciled in France, in anticipation
of divorce, entered into a trust agreement for the support of the
petitioner and their two minor children. Under that agreement
Newton conveyed to trustees $400,000 of his capital contribution in
a New York partnership with directions to the trustees to use the
income as follows:

to apply and pay over from time to time but not less often than quarterly, the
net income and interest to the use of the Third Party [the petitioner] until
the death or re-marriage of said Third Party.

In the event of the remarriage of the petitioner, she was to receive the income of one-half of the trust corpus for life. It was the plan of the parties to the trust agreement that the petitioner should receive $24,000 annually until her death or remarriage, and upon remarriage $14,000 for herself and $5,000 for each child annually.[1]

On July 28, 1924, 5 days after the execution of the trust instrument, the petitioner and Newton were divorced by a decree issued by a French court whose jurisdiction is not questioned. The decree granted custody of the children to the petitioner; it made no reference to the trust agreement, and made no provision for alimony.

The petitioner remarried in 1926.

On May 18, 1928, the petitioner and Newton entered into an agreement therein referred to as the "property agreement" and such agreement will likewise be so referred to herein. At the same time they also entered into a custody agreement. The custody agreement provided that custody of the children should be divided between the petitioner and Newton.

The property agreement provided that Newton should be the guardian of the property of the children and entitled to receive the income which, under the trust agreement of July 23, 1924, was theretofore payable to the petitioner on behalf of the children. In such agreement Newton undertook to pay to the petitioner $6,000 annually for life "in addition to the financial provision made by such indenture of July 23, 1924, for and in behalf of Alice L. Heath," conditioned on her faithful performance of the custody agreement. Newton further agreed to pay to the petitioner during the minority of the children the sum of $1,250 annually for the maintenance and support of each child in the period that the petitioner was entitled to their custody, and a further sum of $2,500 each year the children remained during the summer months in the United States at stipulated localities. The property agreement was not to become effective until the contemporaneous custody agreement was approved by the Surrogate's Court of the County of New York. That court approved the custody agreement on May 22, 1928.

On September 22, 1930, the petitioner and Newton entered into two additional agreements, one called "Property Agreement" and the other "Custody Agreement." The property agreement was not to become effective until the custody agreement had been approved by the Surrogate's Court of New York County. The approval of that court was duly obtained and the property agreement became effective.

The 1930 property agreement canceled the 1928 property agreement, but left the 1924 trust agreement undisturbed. Under the 1930 prop-

---

[1] The trust instrument contained elaborate provisions for distribution of corpus to the two children and their issue on termination of the trust.

erty agreement Newton was required to pay to the petitioner $11,000 annually in addition to amounts receivable by her under the 1924 trust agreement. The $11,000 annual additional payments were terminable at the option of Newton in the event the petitioner should apply to any court for modification or revocation of the new custody agreement.

Under the 1930 custody agreement Newton became the sole guardian of the persons of the children, and he was given exclusive custody of them, with visitation rights in the petitioner. The effect of the agreement was to continue Newton as the guardian of the property of the children.

By the end of 1932, the entire corpus of the trust created by Newton in 1924 had been lost and no income from it was available to be paid to the petitioner. In 1937, following litigation between the petitioner and representatives of the original trustees of the 1924 trust, such representatives established a new trust fund from which the petitioner has received payments which she has reported on her income tax returns.

For the years 1943, 1944, and 1945 the petitioner did not include in income the amounts of $11,000 received by her in each of those years from Newton under the property agreement of September 22, 1930. The respondent has included such amount in the petitioner's income for each year as alimony income.

For the year 1944 Newton brought suit against the collector of internal revenue for the second district of New York for refund of income tax. The question for determination in that case was whether the amount of $11,000 paid by Newton to the petitioner in 1944, pursuant to the property agreement of September 22, 1930, should have been allowed as an item of alimony deductible under section 23 (u) of the Internal Revenue Code of 1939, as defined by section 22 (k) of the Code. The District Court entered judgment for the collector. *Newton* v. *Pedrick*, 115 F. Supp. 368. The United States Court of Appeals for the Second Circuit in *Newton* v. *Pedrick*, 212 F. 2d 357, reversed the District Court and held the payments to be deductible by Newton.

At the time of the trial of this case there was pending in the United States Court of Claims a suit brought by Newton against the United States for recovery of the income tax upon the sum of $11,000 that he paid to the petitioner in the year 1945. In that case the only defense made by the United States against recovery was the bar of the statute of limitations.

The amount of $11,000 received by the petitioner from Newton in each of the taxable years under the agreement of September 22, 1930, was a payment in discharge of a legal obligation of Newton, which, because of the marital or family relationship, was incurred by him under a written instrument incident to the divorce of the petitioner and Newton.

OPINION.

The principal question for decision is whether the sum of $11,000 received by the petitioner in each of the years 1943, 1944, and 1945 under the 1930 "property agreement" is includible in her gross income under the provisions of section 22 (k) of the Internal Revenue Code of 1939.[2]

The several elements requisite to the inclusion in income of a former wife of payments made to her by her divorced husband are stated in *Raoul Walsh*, 21 T. C. 1063, 1069, to be:

(1) There must be a divorce or legal separation under a decree of divorce or of separate maintenance, (2) the payments must be periodic, although they need not be made at regular intervals, (3) only those payments made and received subsequent to the decree qualify, (4) the payments must be in discharge of a legal obligation arising out of the marital or family relationship, (5) the obligation must be imposed upon or incurred by the husband under the decree or under a written instrument incident to the divorce or separation, and (6) the subsection does not apply to such portion of the payments as the decree or written instrument fixes as a sum payable for the support of minor children. * * *

Under the facts established in this case, and as the case is argued on brief, only two of the above-listed requisites need be considered—those numbered (4) and (5), namely, whether the $11,000 payments were in discharge of a legal obligation arising out of the marital or family relationship and whether the obligation to make such payments was imposed upon or incurred by the husband under a written instrument incident to the divorce.

The petitioner makes two principal arguments. She first contends that the statute refers to payments made in discharge of the legal obligation of the husband to support his wife, whereas here the payments were not made for that purpose, but were made in consideration of the agreement regarding the custody of the children. Secondly, it is contended that the agreement pursuant to which the payments were made, which was the 1930 agreement, must have been incident to the *decree* of divorce, whereas such was not the case.

While it is true that the divorced husband's agreement to pay the additional amounts which are here in question appears to have been induced by the petitioner's agreement to relinquish custody of the children, nevertheless, we think such payments must be considered as

---

[2] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument *incident to such divorce or separation* shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * * [Emphasis added.]

having been made in discharge of a legal obligation arising out of the marital or family relationship. In the case brought by the husband of this petitioner to establish his right to a deduction of the $11,000 paid to the petitioner in the year 1944, the Court of Appeals for the Second Circuit considered this question and its conclusions are set forth as follows:

> In our view the 1928 and 1930 Property Agreements, together with their respective Custody Agreements, cannot be regarded as anything but successive reshufflings of the total original divorce arrangements, effected by the 1924 Property Agreement and the divorce decree awarding custody of the children to the mother. * * *
>
> *       *       *       *       *       *       *
>
> The 1924 Property Agreement [trust agreement] and the custody provisions of the divorce decree together constituted a set of obligations incurred by and imposed upon plaintiff-appellant because of "the marital or family relationship." The subsequent Property and Custody Agreements of 1928 and 1930 reflected alterations in the original pattern of the same set of obligations. The fact that increased support for the wife may have given the husband an opportunity to adjust the custody arrangement hardly proves that the motive for the 1930 Property Agreement was other than a "marital" or "family" one.

The court's statement quoted above, in which we concur, completely answers the first argument presented by the petitioner.

Under her second contention the petitioner argues that it is not enough that the agreement pursuant to which the payments are made be incident to the *divorce*, but that the instrument must be incident to the divorce *decree*. The precise language of section 22 (k) is that payments "under a written instrument incident to such *divorce* or separation shall be includible in the gross income of such wife * * *." (Emphasis added.) The argument made by the petitioner in this case has been made, considered, and rejected in cases where a former husband has sought the concomitant deduction allowed under section 23 (u). In the *Raoul Walsh* case, *supra*, we indicated our awareness of the argument and that it had sufficient force to have been at one time the basis of decision. However, we did not accept it. We noted the existence of a subsequently developed view under which, citing *Lerner* v. *Commissioner*, (C. A. 2) 195 F. 2d 296, sections 22 (k) and 23 (u) are regarded as indicating a "congressional policy of placing the tax burden of all general marriage settlements on the party entitled to their enjoyment." We accepted the later view and concluded on this point as follows:

> We think that the language of the statute and the purpose of Congress were to recognize a contractual obligation incident to the status of a divorce, as well as an obligation under a decree, by sections 22 (k) and 23 (u). Congress provided for deductions of periodic payments "under such decree or under a written instrument incident to such divorce." The language following the word "decree" alternatively indicates a second criterion, that of divorce status, as distinguished from the decree of divorce or decree of separation. This is supported by legislative intent and the weight of judicial opinion.

Similarly, in the case brought by the husband of this petitioner to establish his right to a deduction for the $11,000 paid to the petitioner in the year 1944, the arguments of "divorce decree" versus "divorce status" were aired. The Court of Appeals carefully reviewed the arguments and held that the 1930 agreement being "incident to such divorce" was sufficient to support the husband's claim to a deduction. In its opinion the Court of Appeals said in part:

We must, therefore, decide whether Sections 22 (k) and 23 (u) tax to the wife, and permit deduction by the husband, of support payments made under a post-decree agreement which amends a pre-decree agreement, neither agreement having been incorporated in the decree of divorce. This means, we think, that we must choose between an interpretation of Section 22 (k) which reads the clause "a written instrument incident to such divorce or separation" as meaning "incident" to a *decree* of divorce or separation rather than to the *status* of divorce or separation.

The Courts have had difficulty with the proper interpretation of this clause ever since the enactment of the statute, and, perhaps understandably, have shown a reluctance to meet the question head on whenever another way out has been found. * * *

We think, as foreshadowed by Judge Clark's opinion in *Lerner* v. *Commissioner, supra* [and see *Murray* v. *Commissioner, supra; Feinberg* v. *C. I. R.,* 3 Cir., 1952, 198 F. 2d 260; *C. I. R.* v. *Miller,* 9 Cir., 1952, 199 F. 2d 597; and 61 Yale L. J. 1198], that the phrase "incident to such divorce" in Section 22 (k) should be read as referring to the *status* rather than merely the *decree* of divorce or separation, if the purposes of the statute, already discussed in some of our prior decisions (*Gale* v. *Commissioner* and *Lerner* v. *Commissioner, supra*) are to be fully effectuated. "The term 'written instrument incident to such divorce' was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred * * *." Clark, C. J., in *Lerner* v. *Commissioner,* 195 F. 2d at page 298.

* * * * * * *

The statute covers both obligations "imposed" by a decree of divorce or separation and those "incurred" under an agreement incident to a divorce or separation and entered into while the marriage status, and therefore the obligation to support, still existed. It is no longer open to doubt that such an agreement is within the statute even though not incorporated in the decree. *Izrastzoff* v. *Commissioner, Lerner* v. *Commissioner, supra.* And we have held that an agreement which has been incorporated in a decree is subject to modification by a later court order. *Gale* v. *Commissioner, supra. Smith* v. *Commissioner,* 1 Cir., *supra,* has held that an initial "incorporated" agreement may be modified by a subsequent "unincorporated" agreement. All this being so, we see no sound reason why an "unincorporated" agreement which is incident to a divorce, and which otherwise meets the requirements of the statute, cannot be modified by a subsequent "unincorporated" agreement.

In view of the holding of the Court of Appeals for the Second Circuit in the above case, and in view of the position which we have previously taken upon this question, we hold that the 1930 agreement was incident to the divorce within the meaning of the statute. Since the liability for the payments in question was incurred by the

ex-husband under a written instrument incident to the divorce, the amounts of such payments are includible in gross income of the petitioner.

The petitioner contends that the record in the husband's case regarding the deduction for 1944 (*Newton* v. *Pedrick, supra*) was incomplete, and that hence the decision of the Court of Appeals loses some of its force as applied to the present case involving the petitioner. It is true that in the instant case the petitioner introduced several documents which were not introduced in the record in the case before the District Court. However, it appears from the opinions of both the District and the Circuit Courts that the substance of those documents was known to the courts and was considered in rendering their opinions. The petitioner also contends that those courts did not have the benefit of her testimony, particularly with regard to her understanding and intention in connection with the 1930 agreement. She testified at the hearing of this case that it was her intention and understanding that the 1930 agreement was to be completely separate from the 1924 trust agreement—that the 1930 agreement had to do with custody of the children, while the 1924 agreement was connected with the divorce. However, we are concerned with the actual substance and effect of the various agreements, and as stated hereinabove, we concur in the view expressed by the Court of Appeals for the Second Circuit that the 1930 agreement reflected alterations in the original pattern of the same set of obligations as were the subject of the 1924 agreement and that such agreement provided for additional support for the wife.

It follows that in our opinion the respondent did not err in including in the petitioner's income for 1943, 1944, and 1945 the payments made pursuant to the 1930 agreement.

The pleadings raise an issue as to the statute of limitations for the years 1943 and 1944. The parties have stipulated that if we decide that payments received by the petitioner from Newton are includible in her gross income, then the notice of deficiency was timely. In view of our holding and the stipulation of the parties, it follows that the notice of deficiency was timely.

An increase in net income and Victory tax net income in the amount of $50 determined by the respondent for the year 1943 is conceded by him to have been erroneous. Proper adjustment will be made in the recomputation under Rule 50.

By amendment to her petition, the petitioner alleges that the respondent is estopped to tax the $11,000 that she received from Newton in the year 1945. The ground set forth is that the respondent collected income tax from Newton on the $11,000 for that year, has refused to refund the tax to him, and is now contesting Newton's

suit for refund of the tax in the Court of Claims. At the hearing there was evidence that the respondent is defending Newton's suit solely on the ground that the claim for refund was not timely filed.

Clearly there is no basis for application of the doctrine of estoppel under the facts in this case. The respondent is not estopped from collecting a tax imposed by law on the income of one taxpayer because for some reason another taxpayer failed to take a deduction to which he might be entitled or may be precluded by the statute of limitations from the benefit of such deduction. For example, the failure of an employer to claim a salary deduction does not work an estoppel against the collection of income tax on the salary received by the employee. This contention of the petitioner is wholly without merit.

*Decision will be entered under Rule 50.*